AVON PRODUCTS, INC., peticionaria y recurrente, *v.* SECRE-
TARIO DEL TRABAJO, demandado y recurrido.

Número: O-75-425      Resuelto: 7 de marzo de 1977

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

Debemos decidir en este recurso si el servicio prestado por las vendedoras de casa en casa de los productos Avon constituye empleo, según este término se define en la Ley de Seguridad de Empleo de Puerto Rico, 29 L.P.R.A. sec. 702(k)(5)(A), (B), (C). El Secretario del Trabajo resolvió afirmativamente la cuestión determinando que la recurrente Avon Products, Inc., estaba sujeta al pago de la contribución impuesta por dicha ley a los patronos. Al confirmar el tribunal de instancia esta determinación, Avon Products, Inc., recurrió ante nos solicitando la revisión de la sentencia. Expedimos el auto para considerar la cuestión.

Son hechos establecidos en el caso que Avon Products, Inc., no vende sus productos en establecimientos comerciales, sino que los mercadea a través de vendedores que van de casa en casa por zonas previamente asignadas; aunque también pueden venderlos en otras zonas. Generalmente estos vendedores son amas de casa o empleados de otras firmas, que se dedican a vender los productos Avon en su tiempo libre sin que tengan que ajustarse a un horario fijo. También pueden vender otros productos distintos o competitivos o dedicarse a otras actividades. Están organizados en grupos bajo la dirección de supervisores que se conocen con el nombre de promo-

toras. El contrato suscrito por las partes se limita a prescribir que las vendedoras: a) venderán únicamente a consumidores; b) pagarán $8.00 por los formularios de órdenes y por literatura de ventas; c) no pueden incurrir en deudas u obligaciones por cuenta de la Compañía; d) pagarán por cada nueva orden la cantidad adeudada bajo la orden anterior dentro de 20 días del recibo de la mercancía; y e) pagarán $2.00 por concepto de gastos de entrega o cobro por cualquier orden, entendiéndose que las órdenes de venta están sujetas a aprobación de la Compañía. La Compañía, por su parte, se compromete a pagar una comisión de 30% de los precios de venta.

El término empleo ha sido objeto de consideración por este Tribunal en contextos muy variados como en el campo de las compensaciones por accidentes del trabajo, *Admor., F.S.E.* v. *Comisión Industrial,* 101 D.P.R. 6 (1973); *Atiles, Admor.* v. *Comisión Industrial,* 63 D.P.R. 597 (1944) y *Montaner, Admor.* v. *Comisión Industrial,* 59 D.P.R. 285 (1941); en el de las relaciones obrero patronales; *Bengochea* v. *Ruiz Torres,* 103 D.P.R. 68 (1974); *Nazario* v. *Vélez,* 97 D.P.R. 458 (1969) y *Landrón* v. *J.R.T.,* 87 D.P.R. 94 (1963); para la aplicación de decretos de salarios mínimos, *Fernández* v. *A.T.P.R.,* 104 D.P.R. 464 (1975); *Nazario* v. *González,* 101 D.P.R. 569 (1973); *Sierra Berdecía* v. *Pedro A. Piza,* 86 D.P.R. 447 (1962); *Sierra, Comisionado* v. *Llamas,* 73 D.P.R. 908 (1952); *Hospital San José* v. *Junta Salario Mínimo,* 63 D.P.R. 747 (1944), y reclamaciones de daños por el hecho ajeno bajo el Art. 1803 del Código Civil, 31 L.P.R.A. sec. 5142; *Pérez* v. *Hato Rey Bldg. Co.,* 100 D.P.R. 882 (1972); *Padilla* v. *Municipio de Manatí,* 88 D.P.R. 18 (1963) y *Mariani* v. *Christy,* 73 D.P.R. 782 (1952).

En el presente caso, sin embargo, el término empleo tiene bajo la Ley de Seguridad de Empleo una configuración propia cuyo propósito es precisamente obviar las dificultades y el curso azaroso que ha seguido la jurisprudencia al considerar

la diversidad de criterios que delimitan el ámbito de esta relación.

La Ley de Seguridad Social de los Estados Unidos, 42 U.S.C.A., Cap. 7, que estableció el patrón seguido por los Estados y por el Estado Libre Asociado de Puerto Rico para la adopción del Programa de Seguridad de Empleo, no contiene una definición específica del término empleo. La omisión llevó a los tribunales a definir la relación de empleo en términos del criterio de control desarrollado en el derecho común para la aplicación de la doctrina de responsabilidad por el hecho ajeno. *Texas Co.* v. *Higgins*, 118 F.2d 636 (1941); Broden: *Law of Social Security and Unemployment Insurance*, pág. 36 (Gallaghan Company Illinois).

En el derecho común la responsabilidad del principal por los actos de sus empleados o agentes se fundaba en el control que aquél ejercía o podía ejercer sobre los actos de éstos para aminorar el riesgo de daño. El propósito era imponer responsabilidad como un medio para reducir los riesgos ya que teniendo facultad el principal de controlar los actos de sus empleados o agentes muy bien podía tomar providencias adecuadas para evitarlo. Willcox W. Alanson: *The Coverage of Unemployment Compensation Laws*, 8 Vand. L. Rev., 245, 247; Asia, Benjamín: *Employment Relations: Common Law Concept and Legislative Definition*, 55 Yale L.J. 82; Teple, Edwin: *The Employer-Employee Relationship*, 10 Ohio St. L.J. 153, 155. Quizás pudiera justificarse en algunos casos el criterio de control como medida de responsabilidad por el hecho ajeno. Pero no le vemos conexión lógica alguna con el riesgo de desempleo que es consecuencia de múltiples y complejos factores socio-económicos, y, que no depende de lo que el principal pueda hacer en determinado momento para reducirlo, salvo los casos específicos de despido sin causa justificada. Esta discrepancia fundamental en los propósitos de ambos preceptos legales requiere la aplicación de criterios

más afines con la política pública de la Ley de Seguridad de Empleo, *supra.*

En *Board* v. *Hearst Publications,* 322 U.S. 111 (1944) y en *United States* v. *Silk,* 331 U.S. 704 (1947), el Tribunal Supremo de los Estados Unidos adoptó un enfoque más realista estableciendo como punto de partida el criterio de realidad económica como línea de demarcación. El nuevo enfoque propugna que existe la relación de empleo si como cuestión de realidad económica la persona que presta el servicio depende de la empresa para la cual trabaja. Entra aquí la consideración de varios factores que incluyen no sólo el grado de control sino, además, las oportunidades de pérdidas o ganancias, inversión en facilidades, permanencia de la relación y destrezas requeridas en el servicio prestado. Pero ninguno de estos factores es de por sí determinante de la relación. *United States* v. *Silk,* supra.[1] En *Rutherford Food Corp.* v. *McComb,* 331 U.S. 722 (1946), se adicionó el factor de hasta dónde el servicio prestado es parte integral del negocio del patrono.

Este nuevo enfoque supera el rigor de los conceptos arcaicos del derecho común para dar paso a soluciones que logren concretar en casos específicos los propósitos reparadores del estatuto. Acogimos este enfoque en *Hospital San José* v. *Junta Salario Mínimo,* supra, para extender la Ley de Salario Mínimo, Ley Núm. 96 de 26 de junio de 1956, 29 L.P.R.A. sec. 245 y sig., a los empleados de las clínicas y hospitales de Puerto Rico. Pero no fue hasta *Sierra Berdecía* v. *Pizá,* supra, que expresamente rechazamos los conceptos tradicionales del derecho común en la interpretación de la Ley de Salario Mínimo, cuyos objetivos sociales guardan estrecha relación con la Ley de Seguridad de Empleo que aquí in-

---

[1] En el 1948 el Congreso aprobó la llamada "Resolución Gearhart" H.J. Res. 296, Pub. L. No. 80-642, 80th Cong.; 2d Sess. (1948) reafirmando su intención de que se continuaran aplicando los conceptos restrictivos del derecho común.

terpretamos. Posteriormente en *Srio. del Trabajo* v. *Asoc. de Señoras Damas*, 94 D.P.R. 137, 147 (1967), afirmamos definitivamente la pauta de interpretación liberal que debe seguirse al interpretarse la Ley de Seguridad Social de manera que provea protección al mayor número posible de empleados.

■ Partiendo de este trasfondo en el cual se destaca la tendencia de los tribunales a interpretar liberalmente el ámbito de estatutos remediales como es la Ley de Seguridad de Empleo, consideramos ahora la definición que expresamente provee dicha Ley al término empleo. La Sec. 702(k)(5)(A), (B), (C) dispone al efecto:

"(5) El servicio prestado por una persona será considerado como empleo bajo este Capítulo independientemente de si existe o no una relación obrero-patronal, a menos y hasta que se demuestre a satisfacción del Secretario que . . .

(A) En relación con la prestación de su servicio, tal persona ha estado y continuará actuando sin sujeción a mando o supervisión, tanto como cuestión de hecho como bajo su contrato de servicios; y

(B) Tal servicio es prestado bien fuera del curso usual del negocio para el cual se trabaja o fuera de todos los sitios de negocio de la empresa para la cual se trabaja; y

(C) Dicha persona está usualmente ocupada en algún trabajo, profesión o negocio independientemente establecido de la misma naturaleza de aquel comprendido en el servicio prestado." 29 L.P.R.A. sec. 702(k)(5)(A), (B), (C).

■ La recurrente sostiene que el legislador no tuvo la intención de incluir dentro de la Ley de Seguridad de Empleo a las vendedoras Avon por no ser éstas parte de la fuerza trabajadora, ya que son amas de casa que se dedican en forma transitoria a las actividades de venta sin que tengan en dicha actividad un interés básico y continuo. No estamos de acuerdo. La intención del legislador hay que deducirla de los propósitos reparadores del estatuto y de su amplio texto.

■ La definición formulada en la ley establece con meridiana claridad la presunción de que todo servicio prestado por

una persona constituye empleo aun cuando no exista una relación de empleo tradicional u ortodoxa. Inequívocamente el legislador subraya el propósito de que no se excluya de la protección de la ley a ninguna persona, aun las que pudieran considerarse contratistas independientes de acuerdo con las restricciones técnicas tradicionales. *Cf. Landrón* v. *J.R.T.*, supra. Esta definición se formuló por primera vez en la Ley de Wisconsin, 17 W.S.A. 108.02 y fue recomendada a los estados por el Comité de Asuntos Legales de la Conferencia Interestatal de Agencias de Compensación por Desempleo. La preocupación original del Comité fue evitar que se limitara el ámbito de la ley a los términos técnicos de la relación de patrono y empleado. Asia, *op. cit.*, supra, pág. 83, texto y escolios 21–23.

La presunción de inclusión se reafirma en este caso cuando consideramos que el tipo de servicio prestado por las vendedoras aquí envueltas no aparece en la relación de actividades excluidas de la ley. Véase Sec. 702 (k) (6) (A). La recurrente arguye que al enmendarse en el 1971 la Ley de Seguridad de Empleo para extender expresamente el ámbito a varias categorías de servicio no se incluyó el servicio prestado por las vendedoras Avon, de lo cual se infiere la intención de que éstas quedaran excluidas. El argumento es de dos filos pues también es razonable inferir que no se incluyeron expresamente en las enmiendas del 1971 por estar ya incluidas en la definición general.

La presunción de inclusión, sin embargo, es rebatible correspondiendo el peso de la prueba al que la impugna. El estatuto requiere para ello que se demuestre a satisfacción del Secretario del Trabajo la existencia de los criterios mencionados en la definición. El tribunal de instancia concluyó que la recurrente había demostrado a satisfacción el criterio (A) y el criterio (C) pero no el (B). Tuvimos duda si efectivamente también se había cumplido con el (C) y solicitamos a las partes un alegato adicional sobre este punto.

El criterio (A) se refiere a la ausencia de control en la prestación del servicio. No es necesario considerarlo porque estamos de acuerdo que se cumple satisfactoriamente en este caso. Las vendedoras son amas de casa que en su tiempo libre se dedican a vender los productos Avon sin horario fijo y sin límite de ruta.

El criterio (B) requiere en la alternativa que el servicio sea prestado fuera del curso usual del negocio para el cual se trabaja o fuera de todos los sitios de negocios de la empresa. De acuerdo con la prueba presentada Avon fabrica cosméticos para venderlos directamente a los consumidores por medio de vendedoras que van de casa en casa. No vende directamente a distribuidores o a otros comerciantes. Ese es el curso usual del negocio de Avon. El servicio que prestan las vendedoras es parte integral de la empresa ya que sin ese servicio la fábrica Avon no tendría significación alguna. *Cf. Sierra, Comisionado* v. *Llamas,* 73 D.P.R. 908 (1952). Las ventas se efectúan de casa en casa y, por consiguiente, cada casa constituye el sitio de negocio de Avon. Al respecto se ha resuelto en otras jurisdicciones que la frase "sitio de negocio" se refiere no solo a oficina o cuarteles generales de la empresa sino a todo el territorio en que opera la empresa. *In re Bargain Busters, Inc.,* 287 A.2d 554.

El criterio (C) requiere que la persona que presta el servicio esté "usualmente ocupado" en algún trabajo, profesión o negocio "independientemente establecido" de la misma naturaleza de aquél comprendido en el servicio prestado. Aquí nuestro estatuto va más lejos que el de Wisconsin al requerir que el trabajo, profesión o negocio sea de la misma naturaleza del comprendido en el servicio prestado. Véase 17 W.S.A. 108.02.

El requisito dual de estar "usualmente ocupada" e "independientemente establecido" presume la existencia de una empresa separada y aparte que no depende únicamente de una relación particular de servicios. *Spahn* v. *Department of*

*Labor*, 185 N.E.2d 231; Asia, *op. cit.*, supra, pág. 92. La empresa debe de ser una permanente y estable a la cual se dedique regular o habitualmente la persona que presta el servicio. *Vermont Securities* v. *Vermont Unemploy. Comp. Com'n*, 104 A.2d 915; *Commonwealth Bureau of Emp. Sec.* v. *Hecker & Co.*, 185 A.2d 549.

Asia expresa el alcance de este criterio en los siguientes términos:

"El tercer criterio que requiere demostrar que 'dicha persona está usualmente ocupada en algún trabajo, profesión o negocio independientemente establecido' es a un mismo tiempo una radical desviación de los criterios del derecho común y el más pertinente de los tres criterios a los fines del programa de compensación por desempleo. Al determinar donde se debe tirar la línea de inclusión del seguro de desempleo es muy propio distinguir entre la persona que mantiene su propio negocio, que no depende ordinariamente de una relación particular de negocios con otra persona para su supervivencia económica, y, otras personas que dependen de la continuidad de su relación con un principal para su sustento económico. Bajo la definición estatutoria las palabras 'independientemente establecido' se alejan del concepto técnico 'independiente' que define al contratista independiente del derecho común y requiere que la persona que presta el servicio esté ocupada en un trabajo, profesión o negocio establecido independientemente de la relación particular que pueda tener de tiempo en tiempo con un principal. Las palabras 'usualmente ocupado' requieren que la persona habitualmente se mantenga en disposición de rendir servicios en el curso de tal trabajo, ocupación o negocio a otras personas que interesen ocuparlo, y no se satisface este criterio cuando el trabajo, profesión o negocio existe solamente en orden a una relación particular con un principal que desaparecería cuando esa conexión termine." Asia, *op. cit.*, supra, pág. 87.

La prueba en este caso fue insuficiente para demostrar que las vendedoras Avon se dedicaban habitualmente a un negocio propio independiente. Ellas no tienen inversión de clase alguna, no corren riesgo de pérdida, no obtienen beneficio del valor del nombre comercial (*good will*), elementos

típicos de un negocio propio. Tampoco se demostró que ellas se mantuvieran en disposición de rendir servicio en el curso de un trabajo, ocupación o negocio a otras personas que lo interesaran. Por el contrario, puede inferirse del conjunto de la prueba que las actividades de ventas de estas vendedoras existían en orden de una relación particular con Avon. Conviene advertir que el término "trabajo" no responde a la traducción del término *"trade"* del inglés, cuya acepción corriente es de ocupación en el comercio, en el tráfico de mercaderías. *Black's Law Dictionary*, pág. 1665 (Ed. 1951); Velázquez, *Follet Dictionary*, pág. 696 (Ed. Rev. 1967).

Hemos examinado las copiosas decisiones administrativas y judiciales citadas por la recurrente en su alegato y en el memorando complementario para sostener su posición. Las decisiones sobre estas materias en las jurisdicciones estatales son conflictivas y han seguido un curso vacilante que hacen imposible formular una norma de aplicación uniforme. A este respecto puede compararse a *Schomp* v. *Fuller Brush Co.*, 12 A.2d 702 en que se resuelve que los vendedores de productos Fuller son empleados bajo la Ley de Compensación de Desempleo de Nueva Jersey y *Fuller Brush Co.* v. *Industrial Commission of Utah*, 104 P.2d 207, en que se resuelve que estos mismos vendedores no son empleados bajo la ley de Utah. Ambas jurisdicciones contienen la misma definición, que es similar a la que provee nuestra ley.

La corriente de pensamiento mayoritaria en los Estados Unidos sigue una pauta de interpretación liberal que es la reconocida por nuestro propio estatuto al preceptuar inequívocamente que la Ley de Seguridad de Empleo de Puerto Rico será liberalmente interpretada. 29 L.P.R.A. sec. 701. *Srio. del Trabajo* v. *Asoc. de Señoras Damas*, supra. Esa es la pauta que aquí seguimos.

Señala la recurrente que en el 1958 el Negociado de Seguridad de Empleo hizo una determinación al efecto de que los servicios prestados por las vendedoras de productos Avon

no constituían empleo y, por tanto, el Secretario del Trabajo no tenía facultad para hacer una determinación distinta catorce (14) años después. Funda su contención en que el Art. 8 de la ley, 29 L.P.R.A. sec. 707, establece un trámite administrativo que fija en un año el término dentro del cual puede reconsiderarse una determinación. El mencionado Art. 8 meramente regula el trámite administrativo pero en forma alguna impide al Secretario del Trabajo corregir una interpretación administrativa cuando la considere equivocada. La doctrina del impedimento colateral en sus diversas formas es de limitada aplicación en las relaciones del ciudadano con el Estado. *Cf. Mendoza Aldarondo* v. *Asociación Empleados,* 94 D.P.R. 564 (1967); *Licorería Trigo, Inc.* v. *Srio. de Hacienda,* 94 D.P.R. 270 (1967). No obstante, en vista que desde el 1958 Avon Products, Inc., ha venido operando en la fase de distribución de sus productos en Puerto Rico descansando en la determinación administrativa de que sus vendedoras están excluidas de la Ley de Seguridad de Empleo, la interpretación que hoy hacemos de las disposiciones de dicha ley tendrá efectos prospectivos.

*Se dictará sentencia anulando el auto expedido y confirmando la recurrida.*

El Juez Asociado Señor Rigau no intervino.