Irmo Rivera LUGO, et al., Plaintiffs,

v.

MATTHEW BENDER & CO., INC., et
al., Defendants.

Civ. No. 82–0320 (RLA).

United States District Court,
D. Puerto Rico.

Jan. 4, 1984.

Nydia Maria Diaz Buxo, Caguas, P.R., Blas C. Herrero, Jr., Hato Rey, P.R., for plaintiffs.

Patrick J. Wilson and Carlos E. Jimenez, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

ACOSTA, District Judge.

This case is before the Court on a motion for partial summary judgment filed on May 9, 1983 by defendants Matthew Bender & Co., Inc. ("Bender") and Harold Marcus ("Marcus"). Plaintiffs have filed an opposition to said motion, to which defendants have replied.[1] The matter is thus ripe for determination by the Court.

## PROCEDURAL BACKGROUND

This action was commenced on December 30, 1981 in the Superior Court of the Commonwealth of Puerto Rico, Humacao Part, against corporate defendant Bender and five executives of Bender, including defendant Marcus.

Plaintiff Irmo Rivera Lugo ("Rivera") instituted this suit in his personal capacity and on behalf of his conjugal partnership consisting of himself and his wife. The complaint seeks relief jointly against defendants[2] for alleged damages suffered as a result of defendants' purported "constructive dismissal" of Rivera, while he was supposedly acting as "dealer, seller or agent" of Bender in the sale of legal publications.

The complaint alleges Rivera's relationship with Bender commenced in 1972 and lasted until January 1981. Said relationship, it is averred, was "excellent" until 1978 when "defendant begun (sic) with practices such as change in territory, quotas, new dealers all of which caused the hault (sic) and economical desaster (sic) of the plaintiffs' business".[3] Plaintiffs claim that, after 1978 when Bender appointed Marcus to be Rivera's supervisor, Marcus "established new policies" to the detriment of plaintiffs' business.[4] In addition, plaintiffs sustain defendants commenced practices and tactics which led to the alleged "constructive dismissal" of Rivera.[5]

On the basis of the foregoing, plaintiffs request relief for damages allegedly sustained due to loss of income, halt of business, injury to credit and reputation, and for moral and psychological pressures in the total amount of one hundred thousand dollars ($100,000.00)

On February 17, 1982, defendants removed the case to this Court. Thereafter, on April 2, 1982, Bender answered the complaint substantially denying the allegations and raising among other affirmative defenses that the complaint failed to state a claim for relief and that the action was barred by the applicable statute of limitations. Subsequently, on July 8, 1982, after a determination of the jurisdictional issues

1. This Opinion takes into consideration plaintiffs' supplemental motion dated December 19, 1983.

2. The complaint names one corporate defendant, Bender, and five individual defendants. Pursuant to defendants' motion to dismiss challenging the Court's jurisdiction over the individ-

ual defendants, all claims against them, except for Marcus, were dismissed.

3. Complaint, paragraph 9.

4. Complaint, paragraph 10.

5. Complaint, paragraphs 11 through 15.

raised by the several defendants, Marcus filed his answer to the complaint adopting the position previously assumed by Bender in its response.

The two paramount contentions of defendants in their motion for partial summary judgment are that Rivera was an employee of Bender and not an independent dealer during the period of time relevant to this cause of action; and, therefore, the only remedy plaintiffs may be entitled to under the present circumstances, if any, are those provided for by Puerto Rico's Discharge Indemnity Law, Act No. 80 of May 30, 1976, as amended, Art. 1, 29 L.P. R.A. § 185a (hereinafter referred to as "Law 80")[6]; and, that the alleged claims in the nature of tort are time-barred by the applicable statute of limitations.

The Court finds that in their opposition to the motion for partial summary judgment, plaintiffs failed to properly address the issues set forth by defendants, and instead focused their attention on matters not pertinent to the disposition of defendants' motion. Plaintiffs did not controvert the material facts contained in defendants' motion, but rather attempted to "whet the curiosity of the Court"[7] with speculation of evidence that "might turn up at trial"[8] to be possibly elicited from additional witnesses. Plaintiffs, in sum, have failed to bring to our attention "specific facts" that would demonstrate the existence of genuine issues of material facts and the need for a trial. *Emery v. Merrimack Valley Wood Products, Inc.*, 701 F.2d 985, 991 (1st Cir. 1983); *Mas Marques v. Digital Equipment Corp.*, 637 F.2d 24, 27 (1st Cir.1980); *Hahn*

*v. Sargent*, 523 F.2d 461 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

Pursuant to Fed.R.Civ.P. 56(e), these omissions by plaintiffs warrant the entry of summary judgment against plaintiffs if otherwise appropriate.[9] The Court, for the reasons set forth below, hereby finds that it is appropriate to enter summary judgment against plaintiffs and in favor of defendants.

## EMPLOYEE OR DEALER

Rivera began his relationship with Bender in 1972. Defendants contend that since November 1972 and at all times relevant to this action, Rivera was an employee[10] in a sales capacity for Bender.

It is not disputed that Rivera sold Bender's legal publications; that initially he was compensated in a part-salary, part-commissions basis, and later on a straight commissions basis; he was granted group life and health insurance benefits by Bender; he participated in Bender's vacations and retirement plans for employees, was given car allowance, was reimbursed for travel expenses, and was generally awarded the benefits of all of Bender's sales employees.

It is also uncontroverted that Rivera, as a salesman of Bender's products, would solicit business from clients within an assigned territory. His duties were limited to taking orders and submitting them to Bender's headquarters for processing, credit evaluation and approval, and for actual delivery of merchandise to clients. Other than taking orders, Rivera and other

---

**6.** Though defendants characterized their motion as one for "partial" summary judgment, the Court finds, for the reasons to be discussed *infra*, that a resolution of this contention in defendants' favor is dispositive of the entire litigation.

**7.** See *Frito-Lay of Puerto Rico, Inc. v. Canãs,* 92 F.R.D. 384, 392 (D.P.R.1981), citing *Applegate v. Top Associates,* 425 F.2d 92, 96 (2nd Cir.1970).

**8.** See *Pérez v. United States,* 594 F.2d 280, 291 (1st Cir.1979).

**9.** Fed.R.Civ.P. 56(e) provides in part as follows:

When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits, or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

**10.** As Rivera himself acknowledges in paragraph 10(c)(7) and is otherwise implied throughout the allegations in the complaint.

local Bender salesmen, at times, were called upon to solve problems within their respective territory, such as assisting in the collection of bad debts and in particular requests for additional information from potential clients of Bender. Rivera was always supervised by a Bender Regional Sales Manager out of Florida.[11] Under such supervision, Rivera was instructed to submit to Bender the following: a weekly activity report (every Friday) reflecting, for each day he traveled, the orders taken and the publications sold; a monthly report on the Puerto Rico Renewal Program; and reports on telephone calls made.

It is further undisputed that Rivera did not warehouse Bender's products or keep formal inventory of Bender's publications, nor did he deliver books to clients from a local inventory. He only had samples of Bender's products to assist him in his sales.[12] Rivera did not keep invoice forms since his job was mainly to solicit orders for Bender. Rivera had no employees to help him in his sales business. Most of the advertising was made by Bender, very little by Rivera. He received all his compensation from Bender's headquarters. He had no authority to approve credit sales to customers.

Rivera was assigned an annual sales volume quota, which, if reached on account of his efforts, would entitle him to bonus money. This quota was determined based upon the market potential of the salesman's assigned territory. It took into consideration not only potential clients, but also the potential business the employee was expected to generate.

According to Marcus, his only responsibility as Assistant Regional Sales Manager was to supervise salesmen in the Puerto Rico and the Virgin Islands area, including Rivera. Territory assignments, quota levels, processing of orders, hiring or dismissing personnel, acceptance of orders, approval of credit requests, and other compa-

ny procedures and policies were still performed and decided by Bender's management. Marcus' duties were limited to carrying out company procedures.

The relationship between Rivera and Bender ended for all relevant purposes when, on December 26, 1980, Rivera sent a memorandum of resignation from his employment. There is no evidence in the record indicating that Rivera asserted any claims against defendants prior to filing the complaint herein on December 30, 1981.

The issue that concerns us is whether or not the relationship between Rivera and Bender was one of an employee of Bender or a dealer within the meaning of the Dealers' Act of Puerto Rico, 10 L.P.R.A. § 278, *et seq.* ("Dealers' Act"). Having reviewed the facts as they appear in the record herein, the Court must agree with defendants.

The Supreme Court of Puerto Rico has thoroughly examined the nature of employer-employee relationships not only under general common law doctrines, but also in the context of Puerto Rico labor laws. Over the years, a significant number of tests have been developed to assist the courts in this regard. The controlling tests can be generally described as follows:

1. The nature, extent or degree of control, or the right to direct and control the worker, whether or not such right is exercised;

2. If the work performed by the worker falls within the business of the employer and is not of a different nature;

3. The right by both parties to terminate the relationship at any time;

4. The kind of investment required by the employer, if any, to assist the worker in performing the work;

5. If the worker can delegate his performance of the work or services;

---

**11.** From April 1979 through December 26, 1980, the date when the relationship ended, Rivera was supervised by Marcus, who was during that time Assistant Regional Sales Manager of Bender.

**12.** That is, marketing brochures, visual presentations, a sales catalog, and order books.

6. Whether the necessary equipment, materials and assistance in doing the business is provided for by the employer;

7. The degree of initiative or judgment displayed by the worker in his business;

8. The worker's possibility of generating either profits and losses in his business;

9. If the worker has an independent business which contracts with the employer; and

10. The economic dependence the worker has on the employer.

See *Avon Products, Inc. v. Secretario del Trabajo,* 105 D.P.R. 803 (1977); *Fernández v. ATPR,* 104 D.P.R. 464 (1975); *Nazario v. González,* 101 D.P.R. 569 (1973); *Nazario v. Vélez,* 97 P.R.R. 447 (1969); *Landrón v. JRT,* 87 P.R.R. 87 (1963); *Sierra Berdecia, v. Pedro A. Pizá, Inc.,* 86 P.R.R. 423 (1962); *Mariani v. Christy,* 73 P.R.R. 729 (1952); *Atiles, Admor v. Comisión Industrial,* 68 P.R.R. 107 (1948); and *Tomás v. Comisión Industrial,* 59 P.R.R. 852 (1942).

In *Landrón, supra,* 87 P.R.R., n. 9 at p. 93, the Supreme Court of Puerto Rico stated that the characterization or connotation made by the parties with respect to the nature of a relationship is not determinative. This was sustained in *Nazario v. Vélez, supra.*

In *Atiles, supra,* 68 P.R.R. at p. 113, the Supreme Court of Puerto Rico examined the relationship between a street ice cream salesman and his employer.[13] In holding that the relationship was one of employment, the Court noted that although the street salesman was compensated strictly on a percentage of sales basis, that fact alone was not in itself sufficient to support a finding of an independent contractor relationship and that the other criteria outlined above could not be ignored in making a determination.

In *Mariani, supra,* the Supreme Court of Puerto Rico, following *Atiles* and *Tomás, supra,* emphasized that the most important criteria in the determination of an employee status, *vel non,* is the control the employer may have over the work performed, regardless of whether or not said control is exercised. It is the existence of the right or authority to so intervene or control on the part of the employer or principal that makes the other person an employee and not an independent contractor. The Court also stated an independent contractor is one who contracts work and employs others to perform it. *Mariani, supra,* 73 P.R.R. at pp. 743–744.

In *Nazario, supra,* 97 P.R.R. at p. 453, the Supreme Court of Puerto Rico emphasized the degree of economical dependence the taxi drivers, as plaintiffs to the action, had on their employer. The Court held the drivers were in a "manifestly subordinate position" vis-á-vis the franchise holder.

In *Avon, supra,* the Supreme Court of Puerto Rico held that Avon's saleswomen were employees because they could not prove they were habitually engaged in their independent business; made no investment whatsoever; did not engage in a risk of loss; and could not obtain a good will for their business.[14] All of those missing elements were deemed by the Court to be typical of an independent business.

Rivera, as in *Avon, supra,* was a Bender salesman. He was not in business for himself; he was in Bender's business. He sold legal publications door-to-door (office-to-office) under Bender's control and supervision. His compensation came solely from Bender based on his efforts to sell Bender's products.

---

**13.** It was found that the employer (1) gave the salesman the push car to sell ice cream, (2) determined the type and quantity of goods to be sold by the salesman, (3) assigned a route to the salesman, (4) fixed the price at which the goods would be sold, and (5) gave guidelines as to how the salesman was to behave personally. *Atiles, supra,* 68 P.R.R. at p. 113.

**14.** The door-to-door saleswomen: (1) were usually housewives who would sell during their free time with no hourly schedule; (2) had previously assigned territories to sell on; (3) were closely supervised; (4) they took orders on behalf of the company; and (5) were paid on commissions directly by the company.

Rivera was in a "manifestly subordinate position" in his relation with Bender in that he was supervised by Bender; all his commissions were paid by Bender in the manner and amount prescribed by Bender; he received car allowances, reimbursements for travel expenses, and other benefits. Most significantly, Rivera filled out an employment application with Bender, social security was withheld from Rivera by Bender, and unemployment benefits were paid for him by Bender with the Puerto Rico Department of Labor.

In addition, Rivera was under the control of Bender in that he was always closely supervised by a Regional (or Assistant) Sales Manager; he was told what products he could sell and how to sell them; he was assigned sales quotas; he had to prepare and send orders the way Bender directed; and he had to periodically report the business to Bender. All matters pertaining to the acceptance of orders, credit approval, shipping, invoicing, pricing of products, territory and quota assignments, hiring or terminating new salesmen was done by Bender.

Furthermore, Rivera's degree of initiative and judgment on the job was limited to his sales ability since selling techniques, sales catalogs, visual presentations, discounts, pricing, products, territory and compensation were all decided by Bender's management. In addition, Rivera had no warehousing responsibilities or functions, nor did his duties require him to maintain an independent business organization. He was basically an order taker for Bender. He was a hired salesman and sales had to be done by him. See *Sierra Berdecia, supra*, 86 P.R.R. at pp. 429–430.

Plaintiffs argue Bender cannot be an employer of Rivera because it is not a registered corporation in the Department of State of Puerto Rico. However, 14 L.P.R.A. § 2403(2) exempts foreign corporations from the filing requirement if their activity within this jurisdiction is limited to employing salesmen for soliciting orders.

Examining the relationship further under the Dealers' Act, plaintiffs' argument also fails.

The Dealers' Act defines "dealer" as a person "having effectively in his charge in Puerto Rico the distribution, agency, concession or representation of a given merchandise or service." 10 L.P.R.A. § 278.

In *Cruz Ramos v. Brother Intern. Corp.*, 445 F.Supp. 983 (D.P.R.1978), aff'd, 588 F.2d 817 (1st Cir.1978), the Court studied the nature of the responsibilities of a dealership and found that plaintiff therein was a commissioned salesman and not a distributor for purposes of the Dealers' Act in that he was not effectively in charge of the distribution of the products in Puerto Rico since he "had no obligation to purchase inventories; he had no warehouse facilities; he employed no salesmen nor had any of the inherent responsibilities of a distributor ..." (footnote omitted). *Id.*, at p. 984. The Court further found that it was defendant who extended credit to the customers, provided servicing for the merchandise, and engaged in both local and institutional advertising. See also *Sudouest Import Sales Corp. v. Union Carbide Corp.*, 569 F.Supp. 1547 (D.P.R.1983).

Similarly, as already expounded, it is defendant herein who assumed the credit risk and as a general rule was responsible for advertising, delivered the merchandise, and maintained an inventory. Additionally, we find that the element of control already discussed, as well as the health, life insurance, vacation, and retirement benefits afforded to plaintiff and the withholding of social security and payment of unemployment by Bender, remove him from the definition of distributor of the Dealers' Act.

Given the totality of the facts in this case, we are reluctant to conclude that plaintiff is one of the persons the Dealers' Act sought to protect. Plaintiff indeed helped in opening a market for Bender's products in Puerto Rico, but that is the inherent nature of the job of a commissioned salesman. The incentive of the salesman is precisely to increase volume to increase his income. Plaintiff enjoyed the

benefits traditionally associated with an employee. Accordingly, in light of the foregoing, the Court holds Rivera was an employee of Bender and not a dealer.

■ The Court having determined that Rivera was an employee of Bender, it follows that the only remedies available to him for his "constructive dismissal" [15] from his "employment" [16] by Bender would be limited to those specifically provided in Law 80. See *Rivera v. Security National Life Insurance Co.*, 106 D.P.R. 517 (1977). However, since plaintiffs have not asserted any claims herein under said special legislation, the Court need not address such issues.[17]

Accordingly, defendants' motion for partial summary judgment is hereby granted, and the complaint herein is dismissed. The Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.

---

15. Complaint, paragraph 15.

16. Complaint, paragraph 10(c)(7).

17. While the complaint may be deemed to suggest that plaintiffs are seeking to recover for tortious wrongs, no such "tort" claims may be maintained by a wrongfully dismissed employee in this jurisdiction independently of Law 80. See *Rivera*, 106 D.P.R. 517, *supra*. It is noted, moreover, that since the complaint herein was filed more than one year after the date of Rivera's resignation and the occurrence of the other acts complained of, any such tort claims—including those which may have been alleged against Marcus—would be, in any event, time-barred. Articles 1802 and 1868 of the Puerto Rico Civil Code of 1930, as amended, 31 L.P. R.A. §§ 5141 and 5298. See *Febo Ortega v. Tribunal Superior*, 102 D.P.R. 405, 407 (1974); *Feliciano v. AAA*, 93 P.R.R. 655, 657 (1966).