Dra. Carmen M. Martínez Pérez, demandante y recurrida, v. Universidad Central de Bayamón, Inc., demandada y recurrida, y American International Insurance Co. of Puerto Rico, demandada y peticionaria.

*Número:* CC-96-67          *Resuelto:* 11 de junio de 1997

*Rafael Fuster Martínez*, de *Martínez, Texidor & Fuster*, abogado de la parte recurrente; *Enrique Arias Maldonado*, abogado de la parte recurrida.

PER CURIAM:

I

La Dra. Carmen M. Martínez Pérez presentó una demanda sobre incumplimiento de contrato, libelo, calumnia y daños y perjuicios contra la Universidad Central de Bayamón, Inc. (en adelante la Universidad). Posteriormente, la demanda fue enmendada a los únicos fines de incluir como parte codemandada a la aseguradora de la Universidad, American International Insurance Co. of Puerto Rico (en adelante la Aseguradora).

A través de dicha acción, la doctora Martínez Pérez sostuvo que había trabajado durante un (1) año como miembro de la facultad de la Universidad y que su contrato fue

extendido por el término de un (1) año adicional, comenzando el 1ro de agosto de 1993 hasta el 31 de julio de 1994. Ello a razón de dos mil novecientos cincuenta dólares ($2,950) mensuales. Adujo que el 15 de julio de 1993, fue nombrada al puesto de Decana de Asuntos Académicos de la Universidad por un plazo de dos (2) años, efectivo al 1ro de agosto de 1993, y que el 28 de septiembre de 1993 el Presidente de la Universidad le notificó que había decidido prescindir de sus servicios. Añadió que había exigido que se le informara la razón que había tenido la Universidad para tomar dicha determinación, pero que nunca se le ofreció explicación alguna.

Ante tal situación, la doctora Martínez Pérez alegó que "la forma, manera y falta de razón para dar por terminados los contratos de servicios unilateralmente por la demandada, con antelación al vencimiento de los contratos, causó graves sorpresas a los demandantes al igual que inmensos sufrimientos y angustias mentales". Petición de *certiorari, Exhibit* II, pág. 3. Expresó, además, que "la decisión unilateral de la demandada en prescindir de los servicios de la demandante constituye un claro incumplimiento de los contratos vigentes". Íd. Por último, adujo que después de su destitución se corrió el rumor en el plantel de la Universidad de que había sido despedida porque "tenía amores con algunos de sus estudiantes, porque no trabajaba bien y porque estaba loca", íd. lo cual calificó de calumnia y difamación. En consecuencia, reclamó el pago de los salarios contratados y demás beneficios marginales dejados de percibir, más una suma en concepto de los sufrimientos y las angustias mentales sufridas por la cancelación unilateral del contrato. Como parte de su segunda causa de acción, solicitó indemnización por las angustias sufridas debido a la calumnia y difamación de la cual, alegadamente, había sido objeto.

La Universidad contestó la demanda negando las alegaciones imputadas en su contra. Como parte de sus defensas

afirmativas, sostuvo que existía justa causa para ejercer su prerrogativa de no retener los servicios profesionales de la demandante. Por su parte, la Aseguradora aceptó haber otorgado una póliza de responsabilidad general a favor de la Universidad. Sin embargo, alegó que, a tenor con dicha póliza, quedaban excluidos de su cobertura los riesgos por los cuales se había demandado a la Universidad. Por el mismo fundamento, negó que tuviese el deber de ofrecer representación legal a la Universidad.

Así las cosas, el 22 de marzo de 1995 la aseguradora presentó una moción de sentencia sumaria para solicitar que se desestimara en su totalidad la reclamación instada en su contra. Alegó que no existían hechos materiales en controversia, ya que resultaba indudable que la póliza no cubría los daños reclamados por la parte demandante mediante las acciones por incumplimiento de contrato, despido injustificado y difamación. Por esta razón, a su entender, tampoco tenía el deber de otorgar representación legal a la Universidad. Específicamente, adujo que la póliza en controversia excluía de su cubierta los daños que pudieran surgir por motivo de despido o terminación de empleo.

Tanto la parte demandante como la Universidad, presentaron su oposición a la solicitud de sentencia sumaria. Plantearon, en síntesis, que la Aseguradora no podía negarse a proveerle protección al asegurado amparándose en una interpretación restrictiva y evasiva de las cláusulas del contrato de seguro. Por su parte, la Universidad sostuvo que las alegaciones contenidas en la demanda se encontraban enmarcadas dentro de la cubierta del seguro y que, en consecuencia, la Aseguradora tenía el deber de ofrecerle representación legal. Para sostener su contención presentó una declaración jurada del agente de seguros que había vendido la póliza. Mediante dicha declaración jurada, el agente de seguros declaró que, luego de examinar las alegaciones contenidas en la demanda, así como la póliza de seguro otorgada, debía concluir que dichas alegacio-

nes estaban enmarcadas dentro de la cubierta de la referida póliza.

El 10 de julio de 1995, el Tribunal de Primera Instancia, Sala Superior de Bayamón, emitió una Resolución para declarar sin lugar la moción en solicitud de sentencia sumaria. En síntesis, concluyó dicho foro que la Aseguradora venía obligada, bajo los términos de la póliza en controversia, a ofrecer representación legal a la Universidad. Además, sostuvo que, en ausencia de prueba en cuanto a la relación patrono-empleado entre la parte demandante y la Universidad, si en su día se demostraban las alegaciones de la demanda, la Aseguradora respondería a la primera hasta el monto de la cubierta incluida en la póliza.

De dicha determinación, la Aseguradora acudió ante el Tribunal de Circuito de Apelaciones, Circuito Regional de Bayamón, el cual dictó sentencia para confirmar la resolución recurrida. Concluyó dicho foro que el tribunal de instancia no había sostenido que el despido de la demandante y los daños alegados estaban cubiertos por la póliza, sino que la aseguradora venía obligada, bajo los términos de la póliza, a dar representación legal a la Universidad y que, en consecuencia, no procedía dictar sentencia sumaria a favor de la Aseguradora. Finalmente, el tribunal apelativo resolvió que si de una interpretación liberal de las alegaciones surge la posibilidad de que el asegurado esté protegido por la póliza, la compañía aseguradora tiene la obligación de defender al asegurado independientemente de cuál sea la adjudicación final del caso.

Inconforme, acudió ante nos la Aseguradora, alegando, en síntesis, que erró el Tribunal de Circuito de Apelaciones al interpretar la póliza de seguro otorgada entre las partes y, por consiguiente, al concluir que estaba obligada a brindarle representación legal a la asegurada.[1]

Decidimos revisar y a tales efectos expedimos el recurso

---

[1] Específicamente, el recurso presentado contiene los siguientes señalamientos de error:

presentado. Habiendo comparecido ambas partes, y estando en posición de resolver, procedemos a así hacerlo.

## II

En el caso de autos, la Aseguradora otorgó la póliza de seguro Núm. 013-28675 a favor de la Universidad, la cual estuvo vigente entre el 1ro de julio de 1991 y el 1ro de julio de 1994. Según surge de dicho contrato de seguro, éste proveía cubierta para distintos riesgos. Específicamente, se cubrían los riesgos descritos como *Commercial Property, Commercial General Liability, Commercial Crime* y *Commercial Inland Marine.* De estas cubiertas, la única que presenta relación con el caso que nos ocupa es la denominada *Commercial General Liability,* o comúnmente conocida como "cubierta de responsabilidad general por ocurrencia".

En lo pertinente, la referida cubierta establece lo siguiente en sus Secs. I y V:

*SECTION I–COVERAGES*
*COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY*
1. *Insuring Agreement.*
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.

---

"Erró el Honorable Tribunal de Circuito de Apelaciones al confirmar que la primera causa de acción sobre incumplimiento de contrato y/o despido injustificado está cubierta por la póliza otorgada por AIICO como una ofensa ('offense') bajo la cubierta B sobre 'Personal and Advertising Injury Liability' en la póliza.

"Erró el Honorable Tribunal de Circuito de Apelaciones al confirmar que la primera causa de acción expuesta en la demanda se fundamenta en un incumplimiento de contrato, no en un despido injustificado y, por consiguiente, la cláusula de exclusión sobre prácticas relacionadas al empleo no es aplicable a los hechos del caso.

"Erró el Honorable Tribunal de Circuito de Apelaciones al confirmar que la disposición sobre 'Termination of Employment' de ser susceptible a ser interpretada como 'Terminación de Contrato', convierte esta exclusión en el endoso sobre prácticas relacionadas a empleo en una claramente ambigua y, por ende, que la peticionaria está obligada a brindar representación profesional a su asegurada." Petición de *certiorari,* pág. 8.

We may at our discretion investigate any "occurence" and settle any claim or "suit" that may result....

*Coverage B. Personal and Advertising Injury Liability*

1. *Insuring Agreement.*

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. ...

. . . . . . . .

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

. . . . . . . .

*SECTION V–DEFINITIONS*

. . . . . . . .

10. "Personal injury" mean injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy. Petición de *certiorari, Exhibit* IX, págs. 76–86.

Por otro lado, según se desprende del contrato, ambas cubiertas (*Coverage A* y *Coverage B*) fueron modificadas mediante un endoso titulado *Employment-Related Practices Exclusion,* a través del cual se dispusieron las siguientes cláusulas de exclusión:

1. The following exclusion is added to COVERAGE A (Section I):

o. "Bodily injury" arising out of any:

(1) Refusal to employ;

(2) *Termination of employment*;

(3) Coersion, demotion, evaluation, reassignment, discipline, *defamation*, harassment, *humiliation*, discrimination or *other employment-related practices, policies, acts or omissions*; or

(4) consequential "bodily injury" as a result of (1) through (3) above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

2. The following exclusion is added to COVERAGE B (Section I):

c. "Personal Injury" arising out of any:

(1) Refusal to employ;

(2) *Termination of employment*;

(3) Coersion, demotion, evaluation, reassignment, discipline, *defamation*, harassment, *humiliation*, discrimination or *other employment-related practices, policies, acts or omissions*; or

(4) *consequential "personal injury" as a result of (1) through (3) above.* (Énfasis suplido.) Petición de *certiorari, Exhibit* IX, pág. 93.

Fue precisamente al amparo de las cláusulas contenidas en el endoso *Employment-Related Practices Exclusion* antes transcrito, que la Aseguradora sustentó su solicitud de sentencia sumaria. En particular, sostuvo que, a tenor con dichas cláusulas, "los daños corporales y/o las lesiones personales que puedan surgir por motivo de despido y/o cualquier forma de terminación de empleo y/o por difamación y/o por prácticas, políticas, actos u omisiones relacionados a empleo" (Petición de *certiorari, Exhibit* VIII, pág. 58), quedaban expresamente excluidas de la cubierta provista en la póliza de responsabilidad general. En vista de ello, alegó que tampoco existía el deber de proveer defensa legal. Iguales planteamientos presenta ante nos.

Tras un estudio detenido de la normativa aplicable al caso de autos, así como del contrato de seguro otorgado

entre las partes, concluimos que le asiste la razón a la aseguradora. Veamos.

En *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881 (1994), expusimos los fundamentos de derecho aplicables a la controversia que ahora nos ocupa. Específicamente sostuvimos lo siguiente:

> Los tribunales constatemente han interpretado que la obligación de ofrecer representación legal al asegurado es aún más extensa que la obligación de indemnizar por daños en la medida en que éstos estén cubiertos por una póliza de seguros. *Pagán Caraballo v. Silva, Ortiz*, supra, págs. 111–113. *Vega v. Pepsi-Cola Bot. Co.*, 118 D.P.R. 661, 668 (1987). El deber de la compañía aseguradora de proveer representación legal existe, en algunas circunstancias, aun cuando la aseguradora no esté obligada a indemnizar los daños causados por el asegurado a un tercero. Cualquier duda sobre si existe el deber de asumir la defensa en un caso en particular tendrá que ser resuelta a favor del asegurado. Este tipo de obligación subsiste aunque la acción sea infundada, falsa o fraudulenta.
>
> . . . . . . . . .
>
> La obligación de la compañía aseguradora de asumir la representación legal surgirá cuando de una interpretación liberal de las alegaciones surja la posibilidad de que el asegurado esté protegido por la póliza expedida, independientemente de cuál sea la adjudicación final del caso. *No obstante, si las alegaciones claramente excluyen de la cubierta de la póliza los daños reclamados, no podrá imponerse a la aseguradora el deber de defender.* (Énfasis suplido y citas omitidas.) *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, págs. 895–896.

Además, en el referido caso señalamos que al determinar el deber de la compañía aseguradora de ofrecer representación legal a su asegurado, nuestras determinaciones se han hecho caso a caso, examinando las alegaciones o reclamaciones del asegurado (o de los que demanden por daños) y comparándolas con las cláusulas del contrato de seguro del caso en particular. *PFZ Props. Inc. v. Gen. Acc. Ins. Co.*, supra, págs. 897-898.(²)

---

(²) Véanse, además: *González v. The Commonwealth Ins. Co.*, 140 D.P.R. 673 (1996); *Quiñones López v. Manzano Pozas*, 141 D.P.R. 139 (1996); *Pagán Caraballo v.*

■ Por otro lado, en *Quiñones López v. Manzano Pozas*, 141 D.P.R. 139, 156 (1996), expresamos que:

> ... cuando los términos, condiciones y exclusiones de un contrato de seguros —que es ley entre las partes— son claros, específicos y no dan margen a ambigüedades o diferentes interpretaciones, debe hacerse valer los mismos de conformidad con la voluntad de las partes. En ausencia de ambigüedad, las cláusulas del contrato son obligatorias para las partes.

En el caso de epígrafe, al comparar la totalidad de las alegaciones de la demanda instada por la doctora Martínez Pérez con las cláusulas del contrato de seguro otorgado, resulta ineludible concluir que no existe controversia real sustancial sobre el hecho de que la Aseguradora no tiene la obligación de proveer representación legal a la Universidad. Según surge de la referida demanda, la primera causa de acción está fundamentada en la terminación de empleo. Sobre el particular, el tribunal de instancia resolvió que la Aseguradora venía obligada bajo los términos de la póliza a dar representación legal a la Universidad, ya que la demandante nunca ha reclamado haber sido empleada de la Universidad y tampoco se ha demostrado la existencia de una relación patrono-empleado entre ambas. Añadió dicho foro que la primera causa de acción se fundamenta en un incumplimiento de contrato, no en un despido, y que, por lo tanto, la cláusula de exclusión no resultaba de aplicación al caso de autos. No obstante, consideramos que resulta incuestionable el hecho de que la demandante, doctora Martínez Pérez, era una empleada de la Universidad, mediante contratos por tiempo determinado, y que su primera causa de acción está predicada en el despido de su empleo.

---

*Silva, Ortiz*, 122 D.P.R. 105 (1988); *Vega v. Pepsi-Cola Bot. Co.*, 118 D.P.R. 661 (1987); *Morales Garay v. Roldán Coss*, 110 D.P.R. 701 (1981); *Boston Old Col. Ins. v. Tribunal Superior*, 104 D.P.R. 517 (1975); *Fernández v. Royal Indemnity Co.*, 87 D.P.R. 859 (1963).

En *Fernández v. A.T.P.R.*, 104 D.P.R. 464, 465 (1975), expresamos que al determinar si una persona se desempeña como contratista independiente o empleado, se deben examinar los requisitos siguientes: (1) la naturaleza, extensión y grado de control por parte del principal; (2) el grado de iniciativa o juicio que despliega el empleado; (3) la propiedad del equipo; (4) la facultad de emplear y el derecho a despedir; (5) la forma de compensación; (6) la oportunidad de beneficio y el riesgo de pérdida, y (7) la retención de contribuciones. Véanse, además: *Flores Román v. Ramos González*, 127 D.P.R. 601 (1990); *Avon Products, Inc. v. Srio. del Trabajo*, 105 D.P.R. 803 (1977); *Bengochea v. Ruiz Torres*, 103 D.P.R. 68 (1974); *Nazario v. González*, 101 D.P.R. 569 (1973); *Pérez v. Hato Rey Bldg. Co.*, 100 D.P.R. 882 (1972); *Sierra Berdecía v. Pedro A. Pizá, Inc.*, 86 D.P.R. 447 (1962); *Landrón v. J.R.T.*, 87 D.P.R. 94 (1963); R.N. Delgado Zayas, *Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño*, San Juan, Ed. Ramallo, 1989, págs. 24–25.

En lo pertinente, el contrato otorgado por la Universidad a la doctora Martínez Pérez como Decana de Asuntos Académicos contiene las cláusulas siguientes:

---- TERCERO: El sueldo mensual se calculará teniendo en cuenta la escala de salarios aprobada por la Junta de Síndicos. El salario mensual de la Segunda Parte [doctora Martínez Pérez] será de DOS MIL NOVECIENTOS CINCUENTA DOLARES ($2,950). El salario se pagará mensualmente el último día del mes.-----------------------------------------------

- CUARTO: La PRIMERA PARTE [la Universidad] se reserva el derecho de retener, de los pagos efectuados por concepto de remuneración a la SEGUNDA PARTE, los descuentos correspondientes a Seguro Social, Contribución Sobre Ingresos y otros legalmente autorizados por Ley para remesarlos a las autoridades y conceptos respectivos.-----------------------

. . . . . . . .

- SEXTO: La SEGUNDA PARTE se compromete a trabajar a tiempo completo realizando las tareas y obligaciones de su puesto en la Universidad Central de Bayamón, observando fielmente las normas, reglamentaciones y deberes pertinentes a su

cargo, prestando esos servicios de una manera profesional y eficiente.----------------------------------------------

- SEPTIMO: La carga de tiempo completo comprende trabajo de oficina y de tareas administrativas diariamente, según lo requiere la Institución, durante todo el año, observando las normas de Ley respecto a días libres, vacaciones y enfermedad.

- NOVENO: La SEGUNDA PARTE vendrá obligada a rendir cuantos informes le solicite la PRIMERA PARTE, o su representante autorizado, sobre las tareas que la SEGUNDA PARTE se compromete realizar y las obligaciones que se compromete a cumplir en virtud de este Contrato.----------------------

--- Undecimo: Se incorpora en su totalidad y se hace formar parte del presente Contrato la Descripción del Puesto de Decano de Asuntos Académicos de fecha 1ro. de junio de 1993.

- DECIMOTERCERO: El Reglamento de Personal Administrativo, aprobado por la Junta de Síndicos, que ha sido entregado a la SEGUNDA PARTE, y del cual acusa recibo por la presente, se hace formar parte de este Contrato en su totalidad.
-- DECIMOCUARTO: La PRIMERA PARTE podrá resolver o dar por terminado este Contrato por incumplimiento de lo establecido en el mismo, o por las causales que establece el Reglamento de Personal Administrativo, los Reglamentos y Estatutos de la Universidad Central de Bayamón, o por cualquier otra razón que le conceda Ley, o por la cláusula de Terminación de SESENTA (60) DIAS CALENDARIO. Petición de *certiorari, Exhibit* XIII, págs. 142–144.--------------------------------

De las cláusulas antes transcritas se desprende que la Universidad regula extensamente la ejecución del trabajo asignado a la doctora Martínez Pérez como Decana de Asuntos Académicos, y todo ello con arreglo a la reglamentación de la institución y a las normas de ley respecto a días libres, vacaciones y enfermedad. Surge, además, que la Universidad le pagaba mensualmente un sueldo fijo el último día del mes y se reservaba, como patrono, el derecho de cumplir con la ley reteniéndole las partidas de contribuciones y seguro social. No surge que la demandante estuviese facultada o autorizada a emplear personal; no tenía oportunidad de obtener ganancias más allá a los sueldos pactados, ni tenía riesgo alguno de incurrir en pérdidas en

la prestación de sus servicios. Tampoco venía obligada a invertir en equipo alguno; por el contrario, desempeñándose como Decana de Asuntos Académicos, es obvio que todos los equipos, inclusos planta física, equipo de otra naturaleza y materiales, los proveería la Universidad.

En consecuencia, no puede concluirse que la relación entre la demandante y la Universidad sea una de contratista independiente a principal. Coincidimos con la parte peticionaria a los efectos de que irrespectivamente del nombre que se le dé a la terminación del empleo de la doctora Martínez Pérez en la Universidad, llámese incumplimiento de contrato, despido unilateral o despido injustificado, la realidad es que la primera causa de acción esbozada en la demanda se circunscribe exclusivamente a la terminación del empleo (*termination of employment*) que tenía la demandante mediante contrato por término fijo. Reclamación que, como hemos visto, se encuentra expresamente excluida por el endoso otorgado entre las partes.

Por último, mediante su segunda causa de acción la demandante incluyó una reclamación sobre calumnia o difamación al sostener que

... en el plantel de la universidad demandada se rumoró que la razón del despido fue porque la demandante tenía amores con algunos de sus estudiantes, porque no trabajaba bien y porque estaba loca. Ello constituye una total y absoluta calumnia y difamación por no ser cierto. Petición de *certiorari, Exhibit* IV, pág. 39.

Aunque ni el tribunal de instancia ni el Tribunal de Circuito de Apelaciones se expresaron sobre el particular, resulta obvio que la difamación o calumnia de la cual alega haber sido objeto la demandante se encuentra claramente excluida por el endoso *Employment-Related Practices Exclusion*, en cuanto excluye los conceptos *defamation* y *humiliation*, por lo que tampoco existe la obligación de la aseguradora de proveer representación legal a la institución universitaria demandada.

## III

Por todos los fundamentos expuestos anteriormente, *se revoca la sentencia recurrida y se dicta sentencia sumaria para desestimar en su totalidad la reclamación instada en contra de la aseguradora American International Insurance Co. of Puerto Rico, inclusa la determinación del Tribunal de Circuito de Apelaciones a los efectos de que la referida aseguradora tenía la obligación de ofrecer representación legal a la Universidad Central de Bayamón, Inc.*

El Juez Asociado Señor Fuster Berlingeri se inhibió. El Juez Presidente Señor Andréu García no intervino.