Francisco Morales Garay y Otros, demandantes y recurridos, *v.* Rafael Roldán Coss, demandado y recurrido; Corporación Insular de Seguros, tercera demandada, recurrente.

*Número:* R-80-488      *Resuelto:* 11 de febrero de 1981

———

702

*Jorge Meléndez Vela,* abogado de la recurrente; *Justino Ferrer Muñoz,* abogado del demandado-recurrido Rafael Roldán Coss.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Ramón Morales y Morales murió en la madrugada del 2 enero, 1977 a causa de un tiro en la cabeza zafado del revólver de su patrono el demandado Roldán Coss. Estos hombres habían estado de parranda durante toda la noche y tocaban música navideña en el negocio de Roldán cuando surgió una pelea en el área de estacionamiento. El comerciante y su empleado Morales salieron hacia el sitio de la trifulca y siendo personas conocidas las enfrascadas en lucha, Roldán intervino forcejeando para separarlos, y como no tuviera éxito extrajo un revólver con el que golpeaba los contendientes, disparándose el arma en ese momento y alcanzando la bala al empleado Morales que también estaba envuelto en el esfuerzo de pacificación. Roldán Coss fue sometido a proceso por estos hechos, convicto de homicidio involuntario y agresión simple y absuelto en cargos de agresión agravada y dos infracciones de Ley de Armas. Los padres y un hermano gemelo de Mora-

les dedujeron acción civil reclamando daños y perjuicios [1] de Roldán Coss y cuando la aseguradora de éste negó cubierta y rehusó defenderlo, la trajo como tercera demandada. La Sala de Caguas condenó a la aseguradora Corporación Insular de Seguros al pago de $15,000 a cada uno de los padres del occiso, $8,000 a su hermano; $7,500 a Roldán Coss en resarcimiento del costo de defensa del pleito; más $2,500 para honorarios de abogado.

Recurrió la compañía de seguros en revisión y el demandante contra tercero y recurrido Roldán Coss radicó memorando de oposición; y hemos examinado la evidencia testifical de la recurrente, sometida mediante deposiciones de seis testigos, por lo que resolvemos bajo la Regla 50 del Reglamento de este Tribunal.

Señala como errores del Tribunal Superior (1) equivocada apreciación de la prueba, porque debió concluir que la muerte se debió a un acto criminal y voluntario; (2) haber sostenido que la póliza cubría el referido acto; (3) concluir que la muerte fue consecuencia de conducta negligente; (4) sostener la responsabilidad de la aseguradora por acto criminal del asegurado, contraviniendo lo ordenado en el Código de Seguros; (5) imponer a la aseguradora el pago de gastos incurridos por el demandado en su defensa; (6) condenarla al pago de $2,500 para honorarios de abogado; (7) fijar cuantía de indemnización sin haber recibido prueba; o en la alter-

---

[1] En la demanda enmendada que fue finalmente a juicio, se alega la causa de acción, así:

"Que el demandado en forma negligente y mientras intentaba separar a dos personas que se encontraban peleando frente a su residencia y sitio de negocio, sacó su revólver sin preveer las consecuencias que podía tener dicho acto, por lo que en forma imprudente e irrazonable se le escapó un tiro que fue a herir al joven Ramón Morales Morales, conocido por Ramón Morales Garay, causándole la muerte.

"Que la acción del demandado no estaba justificada en forma alguna, siendo su actuación una de negligencia crasa, hechos por los cuales fue encontrado culpable por el Tribunal Superior, Sala de Caguas por el delito de homicidio involuntario."

nativa, haberse excedido en la concesión de daños; y (8) condenarla al pago de $7,500, importe del contrato de honorarios por servicios profesionales entre el demandado Roldán y su abogado, una reiteración del señalamiento 5°. Esta proliferación de señalamientos se debe a la fragmentación de las cuestiones fundamentales sobre las que decidimos ahora, prescindiendo de la minuciosidad y duplicación.

■ En un acto dañoso compuesto en parte por negligencia y en parte por conducta criminal, la preponderancia de uno u otro elemento es lo que finalmente fija su verdadera naturaleza. Así lo resolvimos en *Galarza Soto* v. *E.L.A.*, 109 D.P.R. 179 (1979), al responsabilizar al Estado por la negligencia de un policía que disparó su arma contra el demandante a quien confundió con un prófugo peligroso, causándole graves lesiones, porque no obedeció la orden de detenerse; a pesar de que el Art. 6(d) de la Ley autorizando pleitos contra el Estado, 32 L.P.R.A. sec. 3081(d), niega el consentimiento para acciones por daños y perjuicios por acto u omisión de un funcionario, agente o empleado "constitutivo de acometimiento, agresión u otro delito contra la persona". Declaramos entonces que "es necesario distinguir entre el delito intencional y la negligencia, ya que lo que el estatuto requiere es que el elemento de negligencia o descuido en la actuación del agente supere cualquier grado de responsabilidad criminal presente en su conducta". (²) Pág. 182.

■ La víctima de un acto torticero no pierde su derecho a reclamar contra la aseguradora del causante del daño porque dicho acto esté integrado en menor parte por conducta criminosa. El Derecho no se nutre de postulados absolutos y sí de ecuaciones que reconocen un equilibrio de factores y fuerzas contradictorias que conjugadas resultan en una adjudicación de fundamental justicia.

---

(²) La división proporcional entre causas del daño para fijar responsabilidad es solución práctica aceptada. Prosser, *Handbook of The Law of Torts*, 4ta ed., St. Paul, Minn., West Publishing Co., 1971, pág. 313.

■ El acto del demandado Roldán que causó la muerte a su amigo Ramón (Tite) Morales fue calificado finalmente en su aspecto penal como homicidio involuntario que el Art. 86 del Código Penal, 33 L.P.R.A. sec. 4005, define como ocasionar la muerte de una persona obrando con *negligencia*, o al realizar un acto ilegal que no constituyere delito grave. Estimando ahora los hechos, según resultaron probados tanto en la acción penal como en la civil, forzoso es concluir que con relación al occiso la conducta del demandado hacia el causante de los demandantes fue esencialmente negligente y no criminal al sacar un arma de fuego en la inmediata presencia de su empleado y usarla ilegal y torpemente como rotén o martillo contra otro, con tal impericia y descuido que se produjo el disparo que ni previó ni intentó. El método mismo que siguió el demandado al intervenir para terminar la pelea en su negocio, usando el revólver como maza para pegar, sin halar el gatillo contra los revoltosos es suficiente indicio de que ni quería ni anticipaba la muerte de su compañero de trullas. Ocurrió el "accidente" cubierto por el lenguaje de la póliza emitida por la tercera demandada Corporación Insular de Seguros, que allí se define como evento causante del daño a la persona, que el asegurado ni previó ni intentó.

■ Los términos de las pólizas de seguro deben ser generalmente entendidos en su más corriente y usual significado, sin atender demasiado al rigor gramatical, sino al uso general y popular de las voces. El asegurado que adquiere una póliza tiene derecho a confiar en la cubierta que se le ofrece leyendo sus cláusulas a la luz del sentido popular de sus palabras. Si seguimos esta norma al leer la cláusula de cobertura del riesgo,(3) no hay dificultad en concluir que los hechos

---

(3) "1. Coverage L. Personal Liability

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence . . ."

"VII Definitions

judicialmente depurados son de la naturaleza del evento o accidente contra el cual el comprador de este tipo de póliza buscó protegerse. Al efecto ordena el Art. 1236 del Código Civil, 31 L.P.R.A. sec. 3474, que si alguna cláusula del contrato admitiere diversos sentidos, deberá entenderse en el más adecuado para que produzca efecto. Ha de presumirse que las partes al contratar lo hacen con el propósito de que sus pactos y convenciones tengan efectividad y no para que resulten declaraciones baldías e ilusorias. (Bonet Ramón, *Código Civil comentado*, 2da ed., 1964, págs. 1.010–11.)

Al resolver la acción civil el juzgador no estaba irremisiblemente obligado a llegar a la misma conclusión obtenida en el juicio criminal por homicidio involuntario aun cuando el resultado en éste constituyere prueba prima facie de tal conducta criminosa en el demandado. *Toro Lugo* v. *Ortiz Martínez*, 105 D.P.R. 229 (1976). El juez consideró toda la prueba ofrecida por la aseguradora y sintetizó sus determinaciones a la página 2 de su sentencia, expresando: ". . . de conformidad con la prueba desfilada durante las deposiciones de las partes y de los testigos, el demandado no tuvo la intención de herir ni mucho menos matar a su empleado, quien compartía con él en las trullas navideñas desde la noche anterior". Así quedó la falta de intención determinada como hecha en sano ejercicio del arbitrio judicial. Esa conclusión, sostenida por la prueba, valida la causa de acción de los demandantes bajo los términos de cubierta en la póliza a que nos referimos, y dispone de la alusión de la recurrente al Art. 11.020 del Código de Seguros, 26 L.P.R.A. sec. 1102, en su prohibición de asegurar a persona alguna contra las consecuencias penales de un delito.

La aseguradora, excusada de proveer defensa legal por las alegaciones de la demanda original en que se imputaba

'Ocurrence' means an accident, including continuous or repeated exposure to conditions which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

al asegurado haber causado una muerte por asesinato frío y deliberado, perdió su excusa una vez enmendada la demanda y alegados los hechos de muerte accidental que resultaron finalmente probados en la estimación de la evidencia por el juzgador y que califican la conducta del demandado en relación con el causante de los demandantes como una de negligencia sin intención criminal. Cuando las alegaciones del demandante establecen hechos que sitúan el daño dentro de la cubierta de la póliza por "accidente" o involuntariedad, la aseguradora no puede negar asistencia legal a su asegurado, independientemente de cuál sea la adjudicación final por sentencia del tribunal competente. *Fernández* v. *Royal Indemnity Co.*, 87 D.P.R. 859, 863 (1963). El propio texto de la póliza reconoce la responsabilidad de la aseguradora en su definición de evento (*occurrence*) como "accidente . . . que resulta en daño corporal o a la propiedad, que el asegurado ni anticipó ni intentó" según conclusiones de instancia fundadas en la póliza, y que la parte recurrente no cuestiona.

■ Como la recurrente insiste en que no hay cubierta porque el acto de su asegurado Roldán fue intencional y voluntario; que no fue un homicidio involuntario coetáneo a la agresión a otra persona, sino un crimen intencional que califica al menos como homicidio voluntario, impugnando de este modo la apreciación de la prueba por el tribunal de instancia, hemos leído en su integridad las declaraciones ofrecidas por la aseguradora para variar la determinación de involuntariedad en el juicio criminal y de las mismas no surge razón para alterar la calificación del acto en dicho proceso y la estimación por el juez de la totalidad de la prueba. Su decisión se ajusta a la regla de Derecho penal enunciada en el Art. 15 del Código, 33 L.P.R.A. sec. 3062; el delito será intencional (a) cuando el resultado ha sido previsto y querido por la persona como consecuencia de su acción u omisión; o (b) cuando el resultado sin ser querido ha sido previsto o pudo ser previsto

por la persona como consecuencia natural o probable de su acción u omisión. La muerte del causante de los demandantes no sobrevino como consecuencia penal de un delito pues ninguno intentó el asegurado contra su amigo y empleado, por lo que no procede la defensa de la aseguradora fundada en el Art. 11.020 del Código de Seguros, 26 L.P.R.A. sec. 1102, que prohíbe el seguro "contra las consecuencias penales de un delito".

█ Consideramos, sin embargo, que la aseguradora no fue temeraria al defenderse en esta acción que llega a este Tribunal por vez primera reclamando bajo un seguro contra negligencia, daños causados por el asegurado con conducta que, además de negligente, está definida como delictuosa en el Código Penal.

*Se expedirá el auto y se dictará sentencia Regla 50 modificando la de instancia al solo efecto de eliminar la partida de $2,500 para honorarios de abogado, y así modificada, será confirmada.*

