# 97 DTA 147

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL VII - CAROLINA Y FAJARDO

GLORIA RODRIGUEZ EN REPRESENTACION DE SU HIJO MENOR
LEONARDO R. DE JESUS Y GLORIA RODRIGUEZ RODRIGUEZ
EN SU CARACTER PERSONAL
Apelantes

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO
(DEPARTAMENTO DE EDUCACION DE PUERTO RICO)
Apelados

Núm. KLAN-97-00393

San Juan, Puerto Rico, a 25 de junio de 1997

Panel integrado por su Presidente, Juez Arbona Lago
y los Jueces Negroni Cintrón y Salas Soler

Salas Soler, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El recurso instado en el caso de epígrafe interesa la revisión y modificación de una sentencia emitida el 20 de febrero de 1997 por el Tribunal de Primera Instancia, Sala Superior de Carolina, (Hon. Heydee Pagani Padró, Jueza). Mediante esta, dicho foro declaró con lugar una demanda en daños y perjuicios en cuanto al co-demandado Tomás Mikasobe (Mikasobe), pero desestimó la demanda en cuanto al Estado Libre Asociado de Puerto Rico (E.L.A.) que figuraba como el otro co-demandado. Al así determinar condenó al Maestro Mikasobe a pagar un total de $109,444.31. ■

Gloria Rodríguez, por sí y en representación de su hijo menor de edad, recurre ante nos en apelación sobre aquella porción de la sentencia que fue desestimada contra el co-demandado E.L.A., sobre los actos negligentes y culposos de un agente, funcionario o empleado del estado. Estudiados los planteamientos de ambas partes, resolvemos.

Este caso trata de una demanda en daños y perjuicios incoada por Gloria Rodríguez en representación del menor Leonardo de Jesús Rodríguez (Leonardo) contra el E.L.A. y el maestro Tomás Mikasobe. De la determinación de hechos, no controvertida por ninguna de las partes, se desprende que el co-demandante, al momento de los hechos, contaba con once (11) años de edad y cursaba el quinto grado bajo el Programa de Educación Especial en la escuela pública Jesús T. Piñeiro, del Municipio de Trujillo Alto.

Aunque Leonardo, física y mentalmente se encontraba a la altura de un niño de su edad, debido a problemas dentro del seno familiar desarrolló una serie de problemas psicológicos que afectaban su conducta; además presentaba dificultades de aprendizaje.

Del proceso de terapias y evaluaciones desarrolladas por la doctora Ivette Guerra (Dra. Guerra) a Leonardo, el 22 de octubre de 1990 se redactó un informe con el fin de ser enviado a la escuela de Leonardo, donde se notificaba la condición que sufría el niño y en la que se brindaban unas guías para el manejo del menor dentro de la sala de clases. En dicho documento se le requirió a los maestros el brindarle amor, confianza y seguridad a Leonardo con el fin de que se pudiera sacar al menor de su estado de ansiedad y frustación; y lograr que paulatinamente éste comenzara a confiar en sus maestros. Este informe fue entregado a la escuela en o alrededor de la fecha del mismo.

Como parte de su currículo escolar, Leonardo tomaba una clase de música con el maestro Mikasobe. El 29 de marzo de 1992, el día de los hechos, y luego que los estudiantes llegaron al salón de clases, Mikasobe se dirigió a sus estudiantes entre los que se encontraba Leonardo, indicándoles que le habían informado que uno de ellos lo había *"choteado"*. Al parecer, el día anterior, el maestro había discutido con la orientadora de la escuela. Después del incidente comentó en presencia de varios estudiantes, entre los que estaba Leonardo que *"en el primer "round" no hubo heridos, en el segundo "round" prometo un "knock out"*. Leonardo le manifestó a la orientadora los comentarios que sobre el incidente había hecho Mikasobe. Mikasobe llamó al frente del salón de clases a Leonardo y en presencia del resto de sus compañeros de clase le preguntó porqué lo había *"choteado"*. El Maestro, de forma amenazante, le inquirió si él tenía conocimiento de lo que le ocurría a los *"chotas"*. Acto seguido llamó a un estudiante que se encontraba en el patio del plantel escolar y le pidió que le indicara a Leonardo lo que le pasaba a los *"chotas"*, a lo que el estudiante le respondió: *"a los chotas le cortan la lengua"*.

No conforme con ello y con el propósito de intimidarlo, Mikasobe le manifestó al niño que dentro de la escuela se encontraban algunos estudiantes que estarían dispuestos a realizar lo que *"él ni se imaginaba"*. Además, le indicó que lo hacía responsable de toda acción que la orientadora tomara en su contra, ya que él sabía como habría de reaccionar y que si la orientadora lo volvía a llamar nuevamente, él le avisaría para ir y entrarle *"a burrunazos"* a la orientadora. Este tortuoso camino de epítetos mal sanos, no terminó con esta amenaza, sino que continuó durante el resto del tiempo de la clase dedicado a la enseñanza de música, profiriéndole a Leonardo nombres como *"chota"*, *"que nadie se juntara con él"*, que *"no valía nada"*, y que *"era la basura más grande del quinto-uno"*. ■

Por último y como flecha cruel y certera que sabía la dirección precisa de su blanco, el maestro Mikasobe culminó con toda su obra inquisitiva hacia Leonardo con su nota final: *"a los chotas nadie*

*los quiere y hasta sus padres los matan y que si su padre tuviera un revólver lo mataba por chota".*

Esta situación provocó una grave crisis emocional en Leonardo, la cual fue constatada por la doctora Guerra luego de una evaluación efectuada horas después de los hechos, cuando observó al niño *"tembloroso, exaltado y con lágrimas en los ojos"*. Al salir del salón, el niño se escondió en los predios de la escuela hasta que su madre lo vino a buscar.

Del legajo ante nos se desprende que debido a los hechos anteriormente expuestos fue necesario ingresar a Leonardo en el First Hospital Panamericano para ser tratado de la crisis emocional la cual le provocó un desorden al comer, alteración al patrón del sueño, agresividad, irritabilidad y ataques de pánico. Dicho diagnóstico fue realizado por la doctora Cuevas la misma que dio de alta a Leonardo el 23 de diciembre de 1992. Del récord médico se desprende que el menor sufre de episodios de depresión mayores a los de la preadolescencia. De los testimonios vertidos por los peritos que desfilaron por el Tribunal de Instancia, surge que éstos coincidieron al concluir que dicho incidente afectó a Leonardo a tal punto que tal vez nunca se logre recuperar por completo.

Ante esta situación, el Tribunal de Instancia declaró con lugar la demanda en cuanto al maestro Mikasobe a quien anteriormente se le había anotado la rebeldía, pero desestimando la demanda contra el E.L.A. Luego de un ponderado análisis de los escritos presentados por las partes y a la luz de la totalidad de los documentos obrantes en auto y el derecho aplicable, resolvemos que incidió el foro de instancia al emitir el dictamen apelado, por lo que procedemos a dictar sentencia revocando la misma.

# I

El caso ante nos plantea la capacidad que tiene el Estado de responsabilizarse por las actuaciones negligentes o culposas de uno de sus agentes, funcionarios o empleados públicos cuando se encontraban actuando en su capacidad oficial y dentro del marco de sus funciones. La parte apelante plantea la comisión de error del foro de Instancia al no responsabilizar al E.L.A. por la actuación negligente de su empleado.

Bajo los Art. 1802 y 1803 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141 y 5142, se establece la regla general que prohibe causar daño a otro mediante una conducta negligente, ya sea de forma activa o pasiva; y en el otro, le fija responsabilidad al Estado como a cualquier ciudadano cuando se lleve una acción en su contra.

Sin embargo, para que prospere una acción de daños y perjuicios bajo el Art. 1802, *supra*, es necesario que se consideren tres elementos que deben concurrir: (1) la realidad del daño sufrido; (2) nexo causal entre el daño y la acción u omisión; y, (3) que el acto u omisión sea culposo o negligente.

De otra parte, nuestro ordenamiento reconoce la responsabilidad del estado a base de la doctrina de responsabilidad vicaria, limitada a las disposiciones de la Ley de Pleitos contra el Estado, Ley Núm. 104 del 29 de junio de 1955, 32 L.P.R.A. sec. 3077. A tenor con esta ley, para que un demandante puede prevalecer en un pleito de daños y perjuicios contra el Estado por los actos negligentes de un empleado es necesario que se consideren varios elementos: (1) hay que probar que el causante del daño era agente, funcionario o empleado del Estado y que se encontraba en su capacidad oficial al momento de causar el daño; (2) probar que ese agente, funcionario o empleado actuó dentro del marco de sus funciones, y, (3) que la actuación del empleado fue negligente y no intencional. En *Leyva v. Aristud,* 133 D.P.R. ___ (1993), **93 J.T.S 5,** a la pág 10308, se expresó:

*"el E.L.A. está sujeto a responsabilidad en cualquiera de los siguientes supuestos: (1) cuando el empleado, agente o funcionario causa un daño por su exclusiva culpa o negligencia, mientras desempeña sus funciones y actúa en su capacidad oficial; (2) cuando el empleado, agente o funcionario causa un daño mientras desempeña sus funciones y actúa en su capacidad oficial por una actuación preponderantemente negligente aun cuando dicha conducta tenga algunos elementos intencionales. Véase, Galarza Soto v. E.L.A, 109 D.P.R. 179 (1979); Morales Garay v. Roldán Coss, 110 D.P.R. 701 (1981); (3) cuando, a pesar de que el daño fue directamente producido por un acto enteramente intencional de los cuales no responde el Estado, hubo otros actos negligentes separados de co-causantes del daño por los cuales sí debe responder el Estado. Véase Negrón v. Orozco Rivera, 113 D.P R 712 (1983); Hernández v. E.L.A, 116 D.P.R. 293 (1985); (4) cuando el Estado a*

*través de sus agentes es negligente por omisión al incumplir con un deber impuesto por las leyes y la Constitución".*

Al examinar la situación particular del caso que hoy nos ocupa y de las alegaciones vertidas en la demanda, a la luz del derecho antes reseñado, evidentemente resulta que la responsabilidad que se imputa al Estado está predicada en las actuaciones negligentes de su agente y funcionarios escolares, aunque haya mediado algún elemento de proceder en forma intencional. También satisfacen las alegaciones los otros elementos necesarios antes reseñados para imponerle responsabilidad al Estado. *Soto Rivera v. Ayala Amely,* 133 D.P.R. ___ (1992) **92 J.T.S. 178**. Esto es más patente aún cuando era de conocimiento la existencia de una recomendación médica sobre las dificultades del menor. *Hernández Centeno v. E.L.A.,* 116 D.P.R. 293, (1985).

En el caso ante nos, el foro de instancia no encontró que el Estado haya incumplido su labor de supervisar; sin embargo, somos de la teoría que las autoridades escolares de la escuela tenían un deber de supervisar a sus empleados. Más aún, cuando el maestro Mikasobe se encontraba en su plaza de maestro con un nombramiento transitorio provisional. Surge de los propios reglamentos del Departamento de Educación que un empleado con nombramiento transitorio provisional se habría de comportar como si fuera un maestro de carrera. Sin embargo, la diferencia estriba en que el maestro que se emplea de forma probatoria o con status transitorio deberá ser evaluado periódicamente, realizándole una evaluación final al concluir el período por el cual fue contratado. Reglamento Núm. 3083 de marzo de 1984 del Departamento de Educación, § 6.13 Art. 5.

Por otro lado, del récord no surge que el Departamento de Educación haya cumplido con los requisitos que se le imponen a un maestro para trabajar con niños de educación especial. El reglamento sobre certificación de maestros #5484 (Ley 68 del 28 de agosto de 1990) le requiere a este tipo de maestro que tenga una preparación especial.

La defensa de inmunidad del Estado levantada por los apelados se desmerece cuando se trata de la protección que se le debe brindar a un ciudadano cuando éste le hace unos señalamientos o levanta una querella y no se le brinda la seguridad necesaria por parte de quien tenía el deber ministerial de actuar. *Negrón de León v. Ocasio,* 113 D.P.R. 712 (1983). El Estado tenía el deber de prevenir actuaciones que afectaran la condición del niño además de tener un deber sobre la seguridad e integridad de sus alumnos, sobre todo de aquellos con unas probadas necesidades especiales. La teoría de previsión de daños que aduce el Tribunal de Instancia para liberar al Estado de responsabilidad, va en sentido contrario a esa determinación, ya que era menester de los superiores del maestro de evaluar a su subalterno. Siendo ello así, la inmunidad del Estado levantada por los apelados es improcedente para liberar al Estado de la obligación extracontractual debido al acto negligente de un agente o empleado actuando en su capacidad oficial y en el marco de sus funciones. Por consiguiente, resolvemos que el foro de instancia erró al acoger con aprobación la moción de desestimación formulada por el E.L.A.

Por los fundamentos antes expuestos, se dicta sentencia revocando la parte de la sentencia en cuanto al Estado se requiere, ordenándose al pago de la misma como si éste fuera un deudor solidario, conforme a lo dispuesto en la Ley 104, *supra*, sobre Pleitos Contra el Estado.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 97 DTA 147**

**1.** Los $109,444.31 concedidos a los apelantes se desglosan de la siguiente manera: $75,000.00 al menor Leonardo de Jesús Rodríguez, $30,000.00 a Gloria Rodríguez Rodríguez, madre del menor y el restante de $4,444.31 por los gastos médicos y de hospitalización del menor.

**2.** Referencia al grado y sección del alumno.