# 2003 DTA 135

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE SAN JUAN
PANEL III**

JOSE AUGUSTO GONZALEZ ROBLES; CARMEN M. NEVAREZ ALONSO
Y LA SOCIEDAD LEGAL DE GANANCIALES POR ELLOS COMPUESTA
Apelantes

v.

ANTILLES INSURANCE COMPANY
Apelada

Núm. KLAN-2002-00126

San Juan, Puerto Rico, a 25 de agosto de 2003

Panel integrado por su Presidente, Juez Ortiz Carrión y
los Jueces Segarra Olivero y Negroni Cintrón

Segarra Olivero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

José Augusto González, Carmen M. Nevárez Alonso y la Sociedad Legal de Gananciales por ellos compuesta (los apelantes), nos solicitan la revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, mediante la cual se resolvió que de conformidad con la póliza de seguro emitida por Antilles Insurance Company (Antilles Insurance) a favor de los apelantes, no procedía la reclamación de éstos por la pérdida de un muro de contención y de una verja ocurrida durante el paso del Huracán Hortensia.

Por los fundamentos que más adelante exponemos, se confirma la sentencia apelada.

Examinemos los hechos esenciales y el trámite procesal que dieron margen a la presentación de este recurso según se desprende de los documentos que obran en nuestro expediente.

## I

Antilles Insurance otorgó la póliza de seguro número D-9000014 para cubrir los riesgos y daños a la residencia de los apelantes localizada en la calle 68 Maracaibo, Park Gardens, Río Piedras, P.R. 00926.

En cuanto a las cubiertas, en la póliza se indica lo siguiente:

*"Este seguro aplica a la Localización Descrita, a las Cubiertas para las cuales se indica un Límite de Responsabilidad y a los Peligros Asegurados para los cuales se estipula una prima.*

*Cubierta A- Vivienda*

*Nosotros cubrimos:*

*1. la vivienda en la Localización Descrita en las Declaraciones, usada principalmente para fines residenciales, incluyendo las estructuras anexas a la residencia;*

*2. materiales y suministros ubicados en o adyacentes a la Localización Descrita, usados para construir, alterar o reparar la vivienda o demás estructuras en la Localización Descrita; y*

*3. Si no se cubren distintamente en esta póliza, los equipos de edificios y equipos exteriores usados para servir la Localización Descrita y ubicados ahí.*

*Esta cubierta no aplica a los terrenos; inclusive a los terrenos en que está ubicada la vivienda.*

*Cubierta B- Otras estructuras*

*Nosotros cubrimos otras estructuras ubicadas en la Localización Descrita, separadas de la vivienda por un espacio libre. Esto incluye las estructuras conectadas a la residencia por solamente una verja, servidumbre pública o conexión similar.*

*Esta cubierta no aplica a los terrenos, inclusive los terrenos en que están ubicadas las otras estructuras.*

*No cubrimos otras estructuras:*

*1. usadas total o parcialmente para fines comerciales, fabriles o agrícolas; ni*

*2. alquiladas o destinadas para alquiler a cualquier persona que no sea inquilino de la vivienda, a menos que se usen exclusivamente como garaje privado.*

*En cuanto a los peligros asegurados, se estableció que:*

*A menos que la pérdida esté excluida en las Exclusiones Generales, aseguramos contra la pérdida material directa a la propiedad ocasionada por uno de los Peligros a continuación:*

*1.*

*2. Tormenta de viento, huracán o granizo.*

*Este peligro no incluye pérdidas:*

*a. Al interior de un edificio ni a la propiedad contenida en un edificio, ocasionadas por lluvia, nieve, cellisca, arena o polvo, a menos que la fuerza directa del viento o del granizo dañe el edificio, ocasionando una abertura en el techo o pared y la lluvia, nieva, cellisca, arena o polvo entren por esta abertura, ni*

*b. a la propiedad siguiente si está fuera del edificio;*

*(1) toldos o marquesinas de lona, metal, plástico o madera, rótulos o antenas de radio o televisión exteriores y otras clases de antenas, inclusive su alumbrado, cables de entrada, mástiles y torres; ni*

*(2) botes de remos o canoas; ni*

*(3) árboles, arbustos, plantas o céspedes."*

En cuento a las exclusiones generales se estableció lo que sigue:

*"No aseguramos contra pérdidas ocasionadas directa o indirectamente por ninguna de las siguientes causas. Dichas pérdidas quedan excluidas independientemente de toda otra causa o suceso que contribuya concurrentemente o en el orden que sea a dicha pérdida.*

*1.*

*2.*

*3. Daños por Agua, que significa:*

*a. Inundación, agua superficial, oleaje, marejada, desbordamiento de una extensión de agua o rocío proveniente de uno de los anteriores, ya sea o no impulsado por el viento;*

*b. agua que retroceda a través del alcantarillado o drenaje o que se desborde de un sumidero; o*

*c. agua por debajo de la superficie del suelo, incluyendo el agua que ejerza presión contra o se filtre o gotee a través de un edificio, acera, entrada de vehículos, cimiento, piscina y demás estructuras."*

El 10 de septiembre de 1996, el Huracán Hortensia afectó a Puerto Rico con vientos huracanados y lluvia copiosa.

Los apelantes le reclamaron a Antilles Insurance la suma de $25,600.00 como indemnización por la pérdida de una verja y de un muro de contención localizados en la propiedad protegida.

Antilles Insurance rechazó la reclamación de los apelantes aduciendo lo siguiente:

*"Su póliza, entre otras cosas, cubre daños a la estructura causados por tormenta de viento, huracán o granizo.*

*Este peligro no incluye pérdidas:*

*(a) Al interior de un edificio ni a la propiedad contenida en un edificio, ocasionadas por lluvia, nieve, cellisca, arena o polvo, a menos que la fuerza directa del viento o del granizo dañe el edificio, ocasionando una abertura en el techo o pared y la lluvia, nieve, cellisca, arena o polvo entren por esta abertura.*

*Lamentablemente, por lo expuesto en el párrafo anterior, no podemos honrar su reclamación, ya que los daños reclamados por usted son a consecuencia de inundación, escorrentías y deslizamientos del terreno."*

Los apelantes presentaron una demanda por incumplimiento de contrato de seguro contra Antilles Insurance mediante la cual alegaron que los daños a la verja y al muro de contención estaban cubiertos por la póliza emitida por dicha compañía porque los mismos ocurrieron en el exterior del edificio principal y no estaban excluidos de la protección contra huracanes. Además, alegaron que para garantizar la seguridad de su propiedad y mitigar los daños ocurridos a raíz del paso del huracán, tomaron un préstamo ascendente a $25,600.00, y que se vieron obligados a contratar con otra casa aseguradora para evitar subsiguientes situaciones similares. Solicitaron del tribunal apelado que declarara con lugar la demanda y que, en consecuencia, le ordenara a Antilles Insurance pagar la cubierta correspondiente, gastos relacionados, intereses retroactivos a la fecha de la denegación, costas y honorarios de abogado.

En su contestación a la demanda, Antilles Insurance negó que los daños al muro de contención y a la verja estuvieran cubiertos bajo la póliza, Además, levantó las siguientes defensas afirmativas: que la demanda dejó de exponer una reclamación que amerite la concesión de un remedio; que la causa de acción podría estar prescrita; que los daños reclamados no están cubiertos por la póliza; y que los mismos fueron causados por una inundación.

Posteriormente, Antilles Insurance le envió un interrogatorio a los apelantes por medio del cual les solicitó la siguiente información:

*"Indique qué parte de su propiedad específica sufrió daños.*

*Indique si dichos daños fueron causados por inundación o corriente de agua.*

*Indique si dichos daños fueron causados por vientos.*

*Indique si el terreno alrededor de la verja de su casa cedió."*

Las respuestas de los apelantes a las preguntas anteriores fueron las siguientes:

*"Parte de la propiedad específica que sufrió daños: patio y muro de contención.*

*Los daños fueron causados por corrientes de agua.*

*Los daños no fueron causados por vientos.*

*El terreno cedió debido a erosión por la lluvia."*

Así las cosas, los apelantes presentaron una moción para que se dictara sentencia sumariamente. Alegaron que no existía una controversia material en cuanto a los hechos esenciales del caso y reprodujeron las alegaciones expuestas en su demanda. Solicitaron del tribunal apelado que le ordenara a Antilles Insurance pagar la suma de $25,600.00, los intereses devengados y los que fueran venciendo cada mes.

En su moción en oposición a la moción de sentencia sumaria, Antilles Insurance alegó que de conformidad

con las respuestas al interrogatorio ofrecidas por los apelantes bajo juramento, los daños a la verja y al muro de contención no están cubiertos por la póliza, pues los mismos no fueron causados por el viento huracanado, y sí por un peligro no asegurado, a saber, las corrientes de agua.

Luego de varios trámites procesales, el tribunal apelado dictó sentencia sumaria y desestimó la demanda presentada por los apelantes por los siguientes fundamentos: 1) que tanto la verja como el muro de contención no constituían estructuras y, por ende, propiedad cubierta bajo la póliza de seguro, y 2) que tanto la pérdida del muro de contención como la de la verja fueron causadas por peligros no protegidos, ya de la póliza surge claramente que las pérdidas cubiertas son aquellas ocasionadas por los vientos, y no las ocasionadas directa o indirectamente por el agua.

Inconforme, los apelantes acudieron ante nos y formularon los siguientes señalamientos de error:

*"Erró el Honorable Tribunal de Primera Instancia al interpretar la póliza de manera restrictiva sin observar las directrices interpretativas sobre pólizas de seguro para determinar riesgos cubiertos y daños excluidos.*

*Erró el Honorable Tribunal de Primera Instancia al concluir que la póliza no cubre los daños ocasionados por el Huracán Hortense al muro de contención, ya que en su opinión, la palabra "estructura" excluye la propiedad destruida por el Huracán Hortense y al utilizar la definición de huracán tomada de un diccionario descartando la prueba pericial en el récord.*

*Erró el Honorable Tribunal de Primera Instancia al dejar de considerar las consecuencias jurídicas de un contrato de adhesión.*

*Erró el Honorable Tribunal de Primera Instancia al apreciar la prueba y la eventual conclusión de que procedía la desestimación de la demanda e imponer las costas a la parte recurrente."*

Por estar íntimamente relacionados, discutiremos de forma conjunta los señalamientos de error.

## II

El Art. 11.250 del Código de Seguros, 26 L.P.R.A. sec. 1125, dispone lo siguiente:

*"Todo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta."*

En materia de interpretación de contratos de seguros, el Tribunal Supremo de Puerto Rico estableció en *María Domínguez Vargas v. Great American Life*, 157 D.P.R. ___ (2002), **2002 JTS ___**, lo siguiente:

*"Enmarcados dentro de la voluntad legislativa, hemos expresado lo siguiente: "[l]os términos de las pólizas de seguro deben ser generalmente entendidos en su más corriente y usual significado, sin atender demasiado al rigor gramatical, sino al uso general y popular de las voces." Morales Garay v. Roldán Coss*, 110 D.P.R. 701, 706 (1981). Además, *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881 (1994). (Enfasis suplido.) El derecho de seguros puertorriqueño confiere al asegurado el derecho a confiar en la cubierta que se le ofrece leyendo sus cláusulas conforme al sentido popular de sus palabras. *Id.*

Reiteradamente, hemos establecido que cuando las cláusulas de un contrato de seguro son ambiguas, éstas se interpretarán vigorosamente en contra del asegurador, y liberalmente a favor del asegurado. *Quiñones López v. Manzano Pozas*, 141 D.P.R. 139 (1996); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra; *Meléndez Piñero v.*

*Levitt & Sons of P.R.*, 129 D.P.R. 521 (1991). La razón es que los términos de una póliza de seguros no son producto de la negociación de las partes, sino que éstos son prefijados por el asegurador sin que el asegurado tenga la facultad de variarlos. *Meléndez Piñero v. Levitt & Sons of P.R.*, *supra*. Por tratarse de un contrato de adhesión, *"[e]l asegurador, quien adopta o redacta las pólizas de seguro conforme a sus propios intereses sin la intervención directa del asegurado, tiene la obligación de hacer clara su intención; en otras palabras viene obligado a establecer en la póliza, de manera diáfana, los riesgos por los que viene obligado a responder." Id.*, a la pág. 547.

En *Quiñones López v. Manzano Pozas*, *supra*, a la pág. 155, establecimos claramente que no se favorecerán las interpretaciones sutiles que tiendan a liberar al asegurador de su responsabilidad. *"Corresponde a los tribunales buscar el sentido y significado que a las palabras de la póliza en controversia le daría una persona normal de inteligencia promedio que fuese a comprar la misma." Id.* Los tribunales están llamados a determinar cuáles eran las expectativas de las partes al perfeccionarse el contrato de seguro, manteniendo en perspectiva que toda ambigüedad debe ser resuelta a favor del asegurado. *A.A.A. v. Librotex*, 142 D.P.R. 820 (1997).

En cuanto a las cláusulas de exclusión, de ordinario, éstas no son favorecidas, por lo que en un contrato de seguros éstas deben ser interpretadas restrictivamente en contra del asegurador. *Quiñones López v. Manzano Pozas*, *supra*; *Rivera v. Insurance Co. of P.R.*, 103 D.P.R. 91 (1974).

Por supuesto, lo antes expresado no significa que toda cláusula se interprete a favor del asegurado. Ciertamente, una cláusula clara y libre de ambigüedad que favorece al asegurador debe considerarse obligatoria para el asegurado. *Quiñones López v. Manzano Pozas*, *supra*; *Díaz Ayala, et al. v. E.L.A.*, *supra*. En tales casos no se admitirá una interpretación que vulnere el claro propósito y voluntad de las partes. *"Por el hecho que el asegurador redacte unilateralmente el contrato de seguro, no podrá entenderse que éste necesariamente sea en perjuicio del asegurado, toda vez que los formularios de pólizas se rigen por los preceptos legales estatuidos en el propio Código de Seguros."* R. Cruz, *Derecho de Seguros*, **Publicaciones JTS**, 1999, Sec. 14.1, pág. 167.

No hay duda alguna de que las pólizas que se ofrecen y venden dentro de la industria de seguros en Puerto Rico son, de ordinario, las pólizas modelos que venden las compañías de seguros estadounidenses. *Quiñones López v. Manzano Pozas*, *supra*; *Guerrido García v. U.C.B.*, 143 D.P.R. 337; *Meléndez Piñero v. Levitt & Sons of P.R.*, *supra*. *"En ese sentido, este Foro no ha descartado que al resolver aquellos pleitos de seguros en que se requiere interpretar las cláusulas de la póliza, se utilicen las normas del derecho angloamericano sin descartar las normas del derecho civil."* *Guerrido García v. U.C.B.*, *supra*, a la pág. 347. (Énfasis suplido.) Véase además, *Quiñones López v. Manzano Pozas*, *supra*; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, *supra*; *Meléndez Piñero v. Levitt & Sons of P.R.*, *supra*.

En el caso de autos, el tribunal apelado resolvió que tanto el muro de contención como la verja no eran estructuras y, por ende, propiedad no cubierta por la póliza al definir el término estructura como *"armadura generalmente de acero u hormigón armado y que fija al suelo, sirve de* **sustentación a un edificio***"*, y como *"la distribución y orden de las partes de un edificio."* Actuó incorrectamente el tribunal.

Sabido es que las pólizas que ofrece la industria de seguros en Puerto Rico son, de ordinario, las pólizas modelos que mercadean las compañías de seguros estadounidenses, *María Domínguez Vargas v. Great American Life, supra*. Por esta razón, el tribunal apelado no debió limitarse a definir el concepto estructura, sino que también debió definir el concepto *"structure"* en acato al principio de hermenéutica interpretativa que nos remite al idioma original en que se redacta un documento, que en el caso de autos es la póliza modelo de la cual la póliza que nos ocupa es su traducción.

Ciertamente, el Diccionario de la Real Academia Española, Vigésima Segunda Edición, 2001, nos brinda las dos acepciones a las cuales hizo referencia el tribunal apelado en su sentencia. Sin embargo, el Diccionario

*Webster's Encyclopedic Unabridged Dictionary of the English Language*, Gramercy Books, 1989, pág. 1410, define el término estructura (structure) como: 1) mode of building, construction or organization; arrangement of parts, elements, or constituents: a pyramidal structure, 2) something built or constructed, as a building, bridge, dam, etc.

El *Black's Law Dictionary*, 6ta. Ed., West Publishing Co., 1990, pág. 1424, define el término *"structure"*, así:

*"Any construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner. That which is built or constructed; an edifice or building of any kind.*

*A combination of materials to form a construction for occupancy, use or ornamentation whether installed on, above, or below the surface of a parcel or of land."*

Antilles Insurance, por ser quien redactó la póliza de seguro, tenía la obligación de hacer clara su intención con respecto a las propiedades a las cuales brindaría protección bajo la póliza. No empece lo anterior, la mencionada compañía aseguradora se limitó a establecer que bajo la cubierta "*A*" estaría protegida, entre otras propiedades, la vivienda de los apelantes; y que bajo la cubierta "*B*" estarían protegidas otras estructuras. No obstante, no definió el concepto "*otras estructuras*".

Habida cuenta de que toda cláusula ambigua en un contrato de seguro debe ser interpretada liberalmente a favor del asegurado, y dado que el término "*estructura*" puede referirse a cualquier cosa construida, resolvemos que tanto el muro de contención como la verja constituyen estructuras, y por consiguiente propiedad asegurada bajo la póliza emitida por Antilles Insurance, ▮ sujeta, claro está, a otras excepciones que contiene la póliza.

### III

Según *Couch on Insurance*, 3rd Ed., Westgroup, sec. 153.4 (1998),

*"It has long been recognized that insurance may validly be effected against damage from wind, tornados, cyclone, hurricane, and so forth, and that exclusions from coverage may be stated without destroying that validity, even when the perils so excluded are of a type that often can accompany the covered peril."*

Un examen de la póliza de seguros emitida por Antilles Insurance nos lleva a concluir que la propiedad objeto de la controversia sólo estaba protegida contra los vientos de un huracán, y no contra las lluvias e inundaciones asociadas o producidas por ese fenómeno atmosférico.

Ello es así porque, en cumplimiento de su obligación de establecer los peligros por los cuales les respondería a los apelantes, Antilles Insurance estableció de forma clara y precisa que la póliza de seguro sólo cubriría la pérdida material directa ocasionada por un huracán, si la referida pérdida no estaba excluida por alguna de las exclusiones generales.

Con respecto a las exclusiones generales, la referida compañía aseguradora específicamente señaló que no brindaría protección contra pérdidas ocasionadas directa o indirectamente por inundaciones o agua superficial, fueran éstas impulsadas o no por el viento, y con independencia de que otra causa o suceso hubiese contribuido concurrentemente, o en el orden que fuera, al daño producido por el agua.

Por último, la póliza establecía que los daños al interior de un edificio o a la propiedad contenida en el mismo, ocasionados por la lluvia, sólo estarían cubiertos si se demostraba que los daños fueron causados por la fuerza directa del viento que produjera una abertura en el techo o la pared del edificio por donde pudo pasar la lluvia.

De lo anterior puede concluirse que Antilles Insurance excluyó de los peligros y daños asegurados aquéllos que fueran producidos por el agua asociada a un huracán, y que a esta exclusión sólo señaló una excepción, a saber: que los daños producidos por la lluvia a la propiedad ubicada dentro de un edificio protegido serían indemnizables si la lluvia entró por una apertura provocada por la fuerza del viento.

Según, Appleman, *Insurance Law and Practice*, sec. 3144, pág. 455 (1987):

*"Hurricanes may of course be covered by a windstorm or all risk policy. But where a policy insured against direct loss or damage by tornado, windstorm, or cyclone, but excludes liability for damage by water or rain except under specified conditions, those conditions must be found to exist before liability will be imposed. Where the policy only covers water damage to the roof or walls due to wind, and then only for damage caused by water entering through the break made by the wind, has been held to be covered."*

En el caso de autos, los apelantes aceptaron que los daños sufridos en el muro de contención y la verja fueron ocasionados por las corrientes de agua que ocurrieron a raíz del paso del Huracán Hortensia y no por los vientos huracanados. Toda vez que la póliza no cubre aquellos daños ocasionados por agua, y habida cuenta que los daños producidos por la lluvia no fueron causados en el interior de un edificio protegido debido al hecho de que la fuerza del viento provocó un hueco por donde la lluvia pudo pasar, resulta forzoso concluir que la pérdida reclamada por los apelantes no está cubierta y que, por tanto, no tienen derecho a recibir indemnización alguna bajo la póliza emitida por Antilles Insurance.

La prueba presentada por los apelantes demostró que los daños sufridos por el muro de contención y por la verja fueron causados por un peligro no asegurado. En consecuencia, el tribunal apelado no erró al evaluar la prueba y al concluir que procedía la desestimación de la demanda.

## IV

Aunque por fundamentos distintos a los esbozados por el tribunal *a quo*, se confirma la sentencia apelada, toda vez que la apelación se da contra la sentencia y no contra sus fundamentos. *Pérez v. Criado Amunategui*, ___ D.P.R. ___ (2000), **2000 JTS 105**.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2003 DTA 135

**1.** Al concluir en su sentencia que los daños sufridos por el muro de contención y la verja fueron provocados por el agua, y que ésta no era un peligro asegurado, el tribunal apelado señaló lo siguiente: *"considerada la póliza globalmente, entendemos que el inciso 2 del capítulo de "Peligros Asegurados" no establece una cubierta por las pérdidas ocasionada por la precipitación o escorrentías de aguas producidas por un huracán. Del inciso 2(a) surge claramente que las pérdidas cubiertas son aquéllas ocasionadas por los vientos".*

No obstante, el tribunal apelado continuó y en apoyo a su conclusión señaló que de conformidad con el Diccionario de la Real Academia Española, el término huracán significa *"viento sumamente impetuoso y temible que a modo de torbellino, gira en grandes círculos, cuyo diámetro crece a medida que avanza apartándose de las zonas de calmas tropicales, donde suele tener origen".*

Los apelantes sostienen que el tribunal apelado erró al descartar el informe del meteorólogo Dr. José A Colón, el cual fue presentado por ellos en apoyo a su moción de sentencia sumaria En el mismo, el Dr. Colón, aunque sostiene que un huracán es básicamente un sistema de vientos, define este fenómeno atmosférico como un sistema de viento y lluvia

intenso, cuyos estragos son causados por tres fenómenos principales a saber, por la fuerza del viento, actuando sobre toda propiedad vulnerable a la acción del viento; por la lluvia copiosa y las consecuentes inundaciones de calles, carreteras y ríos y por la acción del mar sobre la costa. No obstante lo anterior, la definición del concepto huracán resulta inmaterial para la solución de este caso por los fundamentos que más adelante exponemos.

**2.** Lo anterior encuentra apoyo en la póliza que nos ocupa, pues en la misma se reconoce la posibilidad de que estructuras que no sean edificios constituyan propiedad asegurada. Así, en la póliza se establece lo que sigue: Ajuste de pérdidas. Las pérdidas a la propiedad cubierta se ajustan como sigue: (1) Propiedad personal; (2) Toldos, o marquesinas de lona, metal, plástico o madera, alfombras, accesorios domésticos, antenas, accesorios domésticos, antenas exteriores y equipos exteriores, estén o no estén conectados; (3) Estructuras que no son edificios.