# 2008 DTA 5

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMON**
**PANEL VI**

JIMMY REVERÓN PADÍN, DAMARIS I. MIRANDA MAISONAVE, POR SÍ Y EN REPRESENTACIÓN DE SU HIJA MENOR DE EDAD MONET REVERÓN MIRANDA
Demandantes

v.

PETS & FRIENDS INC.
Demandados-Recurridos

INTEGRAND ASSURANCE COMPANY, COMPAÑÍA ASEGURADORA A, JOHN DOE Y JANE ROE
Demandados-Peticionarios

Núm. KLCE-2007-00716

[black redaction bar]

San Juan, Puerto Rico, a 30 de noviembre de 2007

[black redaction bar]

Panel integrado por su Presidente, el Juez Rivera Román,
la Juez Coll Martí y el Juez Vizcarrondo Irizarry

Juez Ponente: Vizcarrondo Irizarry

[black redaction bars]

## TEXTO COMPLETO DE LA SENTENCIA

En síntesis, Integrand Assurance Company, en adelante codemandada-peticionaria, recurre ante nuestro foro apelativo por vía de *Certiorari* para solicitar que revoquemos una Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 29 de marzo de 2007. En la Resolución recurrida se declaró Ha Lugar una moción de reconsideración presentada por Pets & Friends, en adelante codemandada-recurrida, y se dejó sin efecto un dictamen anterior del tribunal *a quo* en cuanto a una sentencia sumaria parcial y

desestimación de la causa, a favor de la parte peticionaria. Así las cosas, con posterioridad a la determinación impugnada del foro, la peticionaria suministró copia del contrato de póliza de seguro número 04-CP-7059284-4/000 en conjunto con una moción de reconsideración aduciendo que de la faz de dicho contrato surge que se excluyen específicamente las reclamaciones que se alegaron en la demanda. El Tribunal de Primera Instancia, en adelante T.P.I., rechazó de plano la moción de reconsideración de la parte peticionaria. Inconforme, ésta acude ante nos solicitando la revisión de dicha determinación. Por tanto, nos corresponde resolver si los daños que se alegan en la demanda están cubiertos o excluidos de la póliza de seguros que gobierna el caso de marras.

Por los fundamentos que expondremos a continuación, EXPEDIMOS el auto de *Certiorari* y REVOCAMOS.

## I

La parte demandante Jimmy Reverón Padín, Damaris I. Miranda Maisonave y su hija menor de edad Monet Reverón Miranda llevaron el 22 de julio de 2005 a su mascota, una perrita de raza *"Toy Poodle"* llamada Frida, al establecimiento de la codemandada-recurrida, para que allí la cuidaran. Estando en su cuido, la mascota recibió un servicio de *"grooming"* y como parte del mismo se le colocó un lazo en la oreja derecha. Dicho lazo, según alega la parte demandante, le ocasionó el sangramiento y eventual desprendimiento de parte de su oreja derecha.

El 9 de agosto de 2005, los demandantes y propietarios de la mascota pudieron observar que ésta tenía una goma color rosa unida al lazo que le apretaba la piel de su oreja. Aducen que se comunicaron con los codemandados-recurridos para explicarles la situación y, alegadamente, éstos no respondieron a su reclamo. Así las cosas, la parte demandante llevó a su mascota a un veterinario quien le practicó una cirugía en la cual le extirpó su oreja, teniendo que estar la perrita recluida en la clínica para asegurar su recuperación.

Al momento de los hechos, la codemandada-recurrida tenía una póliza de seguros vigente, suscrita con la codemandada-peticionaria. El 20 de octubre de 2005, los propietarios de la mascota presentaron una demanda en el T.P.I. por daños y perjuicios en contra de la codemandada-recurrida, Pets & Friends, y de la codemandada-peticionaria, Integrand. En dicha demanda reclamaron el reembolso de los gastos médicos incurridos y la compensación por el sufrimiento y angustias mentales alegadamente sufrido.

Luego de varios tramites procesales, la codemandada-peticionaria presentó una *"Moción de Sentencia Sumaria Parcial en Torno a Controversia de Derecho de Seguros"* señalando que la póliza de seguros no proveía cobertura para los daños derivados de la negligencia y/o culpa en la prestación del servicio profesional de *"grooming"* de la codemandada-recurrida Pets & Friends. En atención a su solicitud, el Tribunal *a quo* declaró Ha Lugar la sentencia sumaria parcial a favor de la peticionaria, por no haber presentado la parte contraria objeción a la misma dentro del término correspondiente.

Posteriormente, la codemandada-recurrida presentó una *"Moción de Reconsideración"* ante el T.P.I., solicitando que se dejara sin efecto la sentencia sumaria parcial y desestimación de la demanda a favor de la codemandada-peticionaria. Así las cosas, el 29 de marzo de 2007, el T.P.I. declaró Ha Lugar la *"Moción de Reconsideración"* que presentó la codemandada-recurrida, toda vez que de los autos no surgía copia de la póliza suscrita por la codemandada-peticionaria y la codemandada recurrida, por lo cual no tenía la prueba necesaria para dilucidar si en efecto los daños alegados en la demanda estaban excluidos de la póliza. Inconforme con esta determinación, la codemandada-peticionaria pidió al foro de instancia, una solicitud de reconsideración que acompañó con una copia del contrato de póliza de seguros pertinente. Sin embargo, el T.P.I. no respondió a su solicitud dentro del término de diez días, por lo que ésta acudió oportunamente mediante *Certiorari* ante este Tribunal de Apelaciones, solicitando la revocación de la resolución del foro *a quo* que declaró Ha Lugar la reconsideración de la codemandada-recurrida.

## II

### A. Sentencia Sumaria

Gobernada por las disposiciones de la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36, la moción de sentencia sumaria tiene como propósito principal el propiciar la resolución justa, rápida y económica de litigios que no presenten controversias genuinas respecto a hechos materiales y que consecuentemente no ameriten la celebración de un juicio en su fondo. *Pilot Life Insurance Company v. Crespo Martínez,* 136 D.P.R. 624 (1994). Se puede dictar una sentencia sumaria a favor del promovente sobre la totalidad o cualquier parte de la reclamación solicitada cuando no existe una controversia esencial en cuanto a los hechos y procede la misma como cuestión de derecho. *Corp. Presiding Bishop v. Purcell,* 117 D.P.R. 714 (1986). Procede la sentencia sumaria cuando de los documentos admisibles en evidencia surge que no existe una legítima disputa de hechos y sólo resta la aplicación del derecho. *Pérez v. El Vocero de P.R.,* 149 D.P.R. 427 (1999).

La sentencia sumaria es un mecanismo procesal extraordinario cuyo objetivo es la solución justa y rápida de litigios y casos civiles que no presenten controversias de hechos materiales. *E.L.A. v. Cole Vázquez,* **2005 J.T.S. 55,** 164 D.P.R. ___ (2005). Por ser un remedio discrecional extraordinario sólo debe concederse cuando el tribunal tenga ante sí todos los hechos pertinentes y surja claramente de los documentos la existencia de un derecho. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 D.P.R. 881 (1994). Es decir, sólo procede cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de la prueba. *Medina v. M.S. & D. Química de P. R., Inc.,* 135 D.P.R. 716, 734-735 (1994).

Para derrotar una solicitud de sentencia sumaria, la parte opositora debe presentar documentos que controviertan los hechos presentados por el promovente; de lo contrario, se expone a una sentencia en su contra sin la celebración de un juicio en su fondo. *Toledo Maldonado v. Cartagena Cruz,* 132 D.P.R. 249 (1992). De ordinario, el tribunal examinará la evidencia ante sí de la forma más favorable para el promovido. *Pérez v. El Vocero de P.R., supra.*

Al revisar una determinación del T.P.I., el foro apelativo está limitado a considerar sólo los documentos que se presentaron ante el foro apelado y sólo podrá determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. No puede adjudicar los hechos materiales y esenciales en disputa, lo que le corresponde al T.P.I. *Ortiz Torres v. K & A Developers, Inc.,* 136 D.P.R. 192 (1994). De ordinario, el ejercicio de las facultades discrecionales por el foro de instancia merece nuestra deferencia; por tanto, sólo se debe intervenir con el ejercicio de la discreción en aquellas situaciones en que se demuestre que el foro recurrido actuó con prejuicio o parcialidad, o incurrió en un craso abuso de discreción, o se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. *Lluch v. España Service,* 117 D.P.R. 729, 745 (1986).

Por otra parte, cuando de prueba documental se trata, un tribunal apelativo se encuentra en igual posición que el foro de primera instancia respecto a la evaluación de la prueba, y por tanto, está facultado para apreciarla apoyándose en su propio criterio. *Rebollo v. Yiyi Motors,* **2004 J.T.S. 4,** 161 D.P.R.___ (2004).

### B. Interpretación del Contrato de Póliza de Seguro y Cláusula de Exclusión

Las relaciones contractuales en la industria de seguros están reglamentadas por el Gobierno de Puerto Rico. Así lo ha expresado nuestro Tribunal Supremo en reiteradas ocasiones: *"el negocio de seguros es uno revestido de un alto interés público por lo cual ha sido regulado ampliamente por el Estado".* *Comisionado de Seguros v. Anglo Porto Rican,* 97 D.P.R. 637, 640 (1969); *PFZ Properties v General Accident Insurance,* 136 D.P.R. 881 (1994).

El derecho de seguros emana del Código de Seguros, 26 L.P.R.A. sec. 101 *et. seq.*, y el Código Civil le sirve como derecho supletorio. *Mun. of San Juan v. Great Ame. Ins. Co.*, 117 D.P.R. 632 (1986). Se define el seguro como *"el contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo"*. Código de Seguros, *supra*, sec. 102. Sobre las pólizas se dispone que ésta es el instrumento escrito en el que se expresa un contrato de seguro. Código de Seguros, *supra*, sec. 1114(1). La póliza debe especificar, entre otras cosas: el objeto del seguro, los riesgos que éste cubre, su cantidad y beneficios, así como sus condiciones. Código de Seguros, *supra*, sec. 1114(3) (b) (c) (d) (g). El contrato de seguros da origen a una relación contractual entre el asegurado y la aseguradora, la cual está limitada por su contenido, y en ausencia de ambigüedad, sus cláusulas obligan a las partes. *Martínez Pérez v. U.C.B.*, 143 D.P.R. 554 (1997).

La hermenéutica interpretativa aplicable a las pólizas de seguros dispone que *"[t]odo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta"*. Código de Seguros, *supra*, sec. 1125; *Díaz Ayala v. E.L.A.*, 153 D.P.R. 675 (2001). Además, las normas generales del Código Civil para efectos de interpretación aplican de forma supletoria. *Banco de la Vivienda v. Underwriters*, 111 D.P.R. 1, 16 (1981).

Los términos de las pólizas de seguro deben ser entendidos generalmente en su más corriente y usual significado, sin atender demasiado al rigor gramatical, sino en atención al uso general y popular de las voces. *Morales Garay v. Roldán Coss*, 110 D.P.R. 701, 706 (1981). Por tanto, al interpretar un contrato de póliza de seguros, cuando los términos de la misma son claros, específicos y libres de ambigüedades, las partes se tienen que atener a lo allí dispuesto. *González Azcuy v. Universal Solar Products*, **2006 J.T.S. 27**, 167 D.P.R. __ (2006). Los contratos de seguro deben interpretarse liberalmente a favor del asegurado. *Ramos v. Ortiz Rollet*, 137 D.P.R. 981 (1995); *González v. Coop. Seguros de Vida*, 117 DPR 659, 662 (1986). No obstante, este principio de interpretación sólo debe aplicarse a las cláusulas confusas y no en aquellos casos que se trate de cláusulas de texto claro y libre de ambigüedades, aunque éstas favorezcan el interés del asegurador. *Torres v. ELA*, 130 D.P.R. 640 (1992). Le corresponde al Tribunal analizar el contrato de seguros para determinar el sentido y significado que una persona de inteligencia promedio le daría a sus palabras y cláusulas. *PFZ Properties Inc. v. General Accident Ins. Co.*, *supra*. Además, el contrato de seguros suscrito entre las partes limita el alcance de la responsabilidad del asegurador a aquello que se acordó en la póliza. *Clínica Dr. Perea v. Hernández Batalla*, 85 D.P.R. 767 (1962).

Las aseguradoras tienen la obligación de hacer clara su intención en los contratos, debido a que éstas redactan las pólizas de seguro conforme a sus propios intereses sin la intervención directa del asegurado. *Meléndez Pinero v. Levitt & Sons of P.R.*, 129 D.P.R. 521 (1991). Ahora bien, las normas que rigen la interpretación de los contratos de seguros, no pueden tener el efecto de obligar a que se interprete a favor del asegurado una cláusula que claramente y sin ambigüedad le da la razón al asegurador. *González v. Coop. Seguros de Vida de P.R.*, *supra*. En ausencia de ambigüedad, las cláusulas del contrato son obligatorias a las partes. *Martínez Pérez v. U.C.B.*, *supra*. Si el lenguaje del contrato es explícito, no queda margen para interpretaciones que violenten obligaciones contraídas al amparo de la ley. *Rivera v. Insurance Co. of P.R.*, 103 D.P.R. 91 (1974).

Al determinar cuáles son los riesgos cubiertos por una póliza de seguro, es necesario considerar si en el contrato figura alguna cláusula de exclusión. *Monteagudo v. E.L.A.*, **2007 J.T.S. 159**, 172 D.P.R. __ (2007). Las cláusulas de exclusión de responsabilidad deben ser interpretadas de forma restrictiva, de modo que se cumpla con el propósito de la póliza cuando hay duda sobre ésta. *PFZ Properties, Inc. v. General Acc. Ins. Co.*, *supra*. Sin embargo, cuando una cláusula de exclusión es de aplicación específica, la aseguradora no tiene obligación de responder por los riesgos que estén expresamente excluidos de la póliza. *Marin v. American Int'l Ins. Co. of P.R.*, 137 D.P.R. 356, 362-63 (1994). De modo que le corresponde a la persona que le reclama al

asegurador establecer que la acción u omisión que dio margen a una causa de acción ejercitada está cubierta por un contrato de seguros, para que le corresponda al asegurador demostrar el límite de su responsabilidad. *U.S. Fidelity & Guaranty Co. v. Tribunal Superior*, 85 D.P.R. 131 (1962).

Así las cosas, un asegurador no asume responsabilidad absoluta por las consecuencias de los actos del asegurado, sino que su responsabilidad se limita a los riesgos que cubra el contrato de póliza de seguro entre ambas partes. *Fernández v. Royal Indemnity Company*, 87 D.P.R. 859 (1963). Cuando la cláusula de exclusión aplique a circunstancias específicas, la póliza no deberá cubrir los daños a pesar de las inferencias que podrían surgir del resto de la póliza. *Meléndez Piñero v. Levitt & Sons of P.R., supra.*

Las cláusulas sobre propiedad bajo el cuidado, custodia y control del asegurado serán examinadas tomando en cuenta los hechos y circunstancias del caso en particular. *PFZ Properties v. General Accident Insurance, supra.* Además, *"[e]l asegurador no tiene que proveer cubierta cuando el asegurado ejerce algún tipo de control sobre la propiedad, evitando que este último presente reclamos exagerados o falsos o que el asegurador se convierta en garantizador de los trabajos y obras de las operaciones ordinarias".* *PFZ Properties v. General Accident Insurance, supra.*

## C. La Representación Legal del Asegurado

El derecho que tiene un asegurado de recibir representación legal de su compañía aseguradora es contractual y surge de la póliza. *Pagán Caraballo v. Silva Delgado*, 122 D.P.R. 105 (1988). Cualquier duda sobre la existencia de este deber debe resolverse a favor del asegurado. *Barreras v. Santana*, 87 D.P.R. 227 (1963.) Para determinar la existencia del mismo, hay que evaluar las alegaciones de la demanda en el caso en específico para así determinar qué acciones caen bajo la cubierta de la póliza. A base de la totalidad de las alegaciones hechas por el demandante y de la interpretación conjunta de la póliza, se determinará si existe la posibilidad de que esté protegido por la póliza. *Pagán Caraballo v. Silva Delgado, supra.*

La aseguradora no puede negarle asistencia legal al asegurado demandado, cuando de las alegaciones que presente el demandante se establezcan hechos que sitúan el daño dentro de la cobertura de la póliza por accidente o involuntariedad. *Morales Garay v. Roldán Coss*, 110 D.P.R. 701 (1981). Sin embargo, si los daños reclamados claramente se excluyen de la cubierta de la póliza, no se le puede imponer a la aseguradora el deber de defender al asegurado. *Martínez Pérez v. U.C.B., supra.* Como hemos visto, para determinar si un pleito está cubierto por los términos de una póliza de seguros, se deberán evaluar las alegaciones que contiene la demanda. *Vega v. Pepsi-Cola Bot. Co.,* 118 D.P.R. 661, 665-66 (1987); *Morales Garay v. Roldán Coss, supra; Fernández v. Royal Indeminity Co.,* 87 D.P.R. 859, 863 (1963); *Boston Old Col. Ins. v. Tribunal Superior*, 104 D.P.R. 517 (1975). Las determinaciones sobre la existencia de este deber son caso a caso, luego de examinar las alegaciones de la demanda y comparar las mismas con las cláusulas del contrato. *PFZ Properties v. General Accident Insurance, supra.*

## III

Nos compete revisar si el T.P.I. erró al acoger la moción de reconsideración de la codemandada-recurrida y dejar sin efecto su dictamen de sentencia sumaria parcial y desestimación de la demanda a favor de la parte recurrente, a pesar de habérsele solicitado su reconsideración. Como señalamos, nos encontramos en igual posición que el Tribunal *a quo* para aquilatar la prueba documental suministrada y a continuación procedemos a resolver la controversia en sus meritos.

El único hecho en controversia es si a la luz de las reclamaciones de daños de la parte demandante, la codemandada-peticionaria viene obligada a proveer cubierta, bajo los términos de la póliza de seguro que contrajo con la codemandada-recurrida. Evaluando los autos de este caso, es evidente que no debe responder la peticionaria, puesto que no le asiste el derecho a la parte recurrida, conforme las disposiciones de la póliza de

seguro en controversia. Por tal razón, procede en derecho revocar la resolución recurrida.

La controversia gira en torno a la interpretación de las cláusulas de exclusión del contrato. El contrato consiste de una póliza de responsabilidad general comercial, mejor conocida como *"Comercial General Liability."* Ya sabemos que la obligatoriedad de los contratos de póliza de seguros debe expresarse en un lenguaje claro e inequívoco. Para llevar a cabo este análisis es necesario reconocer que la responsabilidad de la aseguradora se determina a base de los riesgos asumidos que se estipularon en los términos de la póliza suscrita entre las partes. De inicio, debemos advertir que la propia póliza en controversia contiene endosos, los cuales disponen de excepciones que limitan su cobertura. Veamos.

En el caso de autos, la aseguradora-peticionaria otorgó la póliza de seguro a favor de la recurrida, la cual estuvo vigente entre el 30 de julio de 2004 y el 30 de julio de 2005. Véase, Anejo XXXXVI, pág. 122, peticionaria. Surge de la misma, que la aseguradora describió el negocio asegurado como una tienda de accesorios para mascotas, es decir un *"animal accesories store."* Se desprende de este acuerdo titulado *"common policy declarations"* que la póliza de seguros proveyó cubierta para distintos riesgos. La cubierta que nos concierne se titula *"General Commercial Liability, "* y guarda una relación directa con nuestra controversia.

Esta cubierta se conoce comúnmente como una cubierta de responsabilidad general. En lo pertinente, la referida cubierta establece los límites económicos en cuanto al máximo que la aseguradora vendrá obligada a responder. Véase, Anejo XXXXVI, pág. 166, peticionaria. Según se desprende de este acuerdo, la misma dispone límites para el *"personal injury & advertising injury, "* entre otras cosas. Esta cubierta guarda relación con las reclamaciones de terceros por daños y perjuicios, al igual que establece un máximo de $500,000 en su cubierta. Es pertinente señalar que en la parte inferior de este acuerdo, se hace una referencia específica al endoso número CG2116 (11-85), titulado *"Exclusion-Designated Profesional Services: Any Profesional Services of Any Kind or Nature. "* Véase, Anejo XXXXVI, pág. 186, peticionaria.

Es decir, en el caso de marras existe un acuerdo que claramente indica que contiene un endoso de exclusión, de tal forma que se responderá por los daños causados por el asegurado, salvo que estén expresamente excluidos por este endoso. Véase Anejo XXXXVI, pág. 166, peticionaria.

El acuerdo de cobertura general de aplicación también le advierte al asegurado que existen otras restricciones a su cobertura y expone *"[v]arious provisions in this policy restrict coverage. "* En lo pertinente, el mismo dispone lo siguiente:

*"Section I – Coverages*

*Coverage A. Bodily Injury And Property Damage Liability*

*1. Insuring Agreement*

*a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.* **However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.** *[...]*

*2. Exclusions*

*This insurance does not apply to:*

*a. Expected or Intended Injury*

*"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.*

*b. Contractual Liability*

***"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.[...]***

*Coverage B.      Personal and Advertising Injury Liability*

*1. Insuring Agreement*

*a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. **However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply.[...]***

***2. Exclusions***

*This insurance **does not** apply to:*

*a. "Personal injury" or "advertising injury":*

*[...]*

*(4) **For which the insured has assumed liability in a contract or agreement.** This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; [...]*

*Section V — Definitions [...]*

*3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. [...]*

*13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:*

*a. False arrest, detention or imprisonment;*

*b. Malicious prosecution;*

*c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor.*

*d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or*

*e. Oral or written publication of material that violates a person's right of privacy".* (Énfasis nuestro). (Citas

omitidas). Véase, Anejo XXXXVI, pág. 170, peticionaria.

Por otro lado, según se desprende del propio contrato, su cubierta fue modificada a través del mencionado endoso titulado *"Exclusions - Designated Profesional Services."* Véase Anejo XXXXVI, pág. 186, peticionaria. A través de éste, la aseguradora estableció la siguiente cláusula de exclusión que modificó el acuerdo:

*"[w]ith respect to **any professional services** shown in the Schedule, **this insurance does not apply to** "bodily injury," "property damage," "personal injury," or "advertising injury" due to the rendering or failure to render any professional services"*. (Énfasis nuestro)

Si bien es cierto que este endoso no identifica taxativamente los servicios profesionales que se excluyen de su cubierta, el propio endoso nos refiere nuevamente al acuerdo original y esboza *"[i]f no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement"*. Precisamente cuando hacemos referencia al acuerdo original, vemos que es el *"Commercial General Liability,"* cuyo subtitulo esboza *"Renewal Declaration."* Véase Anejo XXXXVI, pág. 166, peticionaria. Como pudimos apreciar previamente, el mismo contiene en su parte inferior la referencia al endoso antes descrito. Inmediatamente debajo de esta referencia, claramente el documento esboza que esta cubierta excluye *"**Any Professional Services of Any Kind or Nature.**"* Se desprende de estos documentos que fue clara la intención de la aseguradora, el aplicar esta cláusula de exclusión tanto a la Cubierta A, como a la Cubierta B de esta póliza.

Fue precisamente al amparo del endoso antes descrito, que la aseguradora sustentó su solicitud de sentencia sumaria. La misma sostuvo que en virtud de esta cláusula, los daños corporales (*"bodily injury"*) y a la propiedad (*"property"*) que podían surgir como producto de la prestación de los servicios que ofrece el negocio asegurado, quedaron excluidos de la cubierta provista por esta póliza de responsabilidad general. En vista de esto, la peticionaria también alegó que tampoco tenía el deber de proveer representación legal al asegurado. Al llevar a cabo una interpretación de este contrato y la cláusula de exclusión antes transcrita, se desprende que la misma excluye *"Any Professional Services of Any Kind or Nature."* Siendo este lenguaje claro, el mismo no da margen a ninguna otra interpretación, por lo que se excluye cualquier servicio profesional que preste el asegurado y de cualquier forma. Es evidente que la propia póliza establece que la aseguradora no responderá por los daños físicos y de propiedad que le pueda ocasionar a terceros, la prestación de los servicios del asegurado.

Aunque los contratos de póliza de seguros por lo general deben ser interpretados liberalmente, en el caso de autos la póliza es clara e inequívoca en cuanto a la exclusión específica de los daños que se alegan en la demanda a consecuencia de la prestación de los servicios de la codemanda-recurrida, producto de sus operaciones. El endoso de la póliza titulado *"Designated Professional Services"* excluye los mismos de su cobertura, por lo que es ineludible concluir que esta póliza de seguros no cubre los daños que se alegan.

Aunque el mecanismo procesal de sentencia sumaria como remedio discrecional no procede cuando el Tribunal no tiene ante si los documentos necesarios para analizar la aplicación de una cláusula de exclusión de una póliza de contrato de seguro, *PFZ Properties v. General Accident Insurance, supra,* en el caso de autos, el Tribunal eventualmente tuvo ante si copia del contrato, con todos los hechos esenciales para determinar si la cláusula de exclusión era aplicable a los hechos particulares del caso. A base del documento provisto, que contiene la copia del contrato, el Tribunal inferior debió haber aplicado el derecho en materia de seguros cuando advino en conocimiento de la prueba documental necesaria, sin la necesidad de rechazar la moción de reconsideración que presentó oportunamente la peticionaria. Luego de llevar a cabo un análisis del contenido del contrato de póliza, en conjunto con la cláusula de exclusión pertinente, es evidente que no hay una controversia, por ser su lenguaje claro e inequívoco, lo cual limita su interpretación. Quedando este particular aclarado, también podemos concluir que la aseguradora tampoco tiene el deber de proveer representación legal

al asegurado.

## IV

Por las razones antes expuestas, se EXPIDE el auto de *Certiorari*, se REVOCA la determinación recurrida y se devuelve el caso al Tribunal de Primera Instancia para ulteriores trámites consistentes con nuestra decisión.

Regístrese y notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lic. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones